Opinion
LIU, J.
The automobile sales contract in the present case has an arbitration agreement that provides, among other things, that arbitral awards of $0 or over $100,000 as well as grants but not denials of injunctive relief may be appealed to a panel of arbitrators. The arbitration agreement also has provisions that require the party appealing the award to front the costs of the appeal, preserve the right of the parties to go to small claims court and to pursue self-help remedies, and waive the right to class action litigation or arbitration. The agreement further provides that if the class waiver is deemed unenforceable, then the entire arbitration agreement shall be unenforceable.
In this dispute over the sale of a car, plaintiff Gil Sanchez filed a class action lawsuit against defendant Valencia Holding Company, LLC (Valencia), and Valencia moved to compel arbitration. The trial court denied the motion, finding the class waiver and, in turn, the entire arbitration agreement unenforceable. Subsequently, the United States Supreme Court held in AT&T Mobility LLC v. Concepcion (2011) 563 U.S. 333 [179 L.Ed.2d 742, 131 S.Ct. 1740] (Concepcion) that the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) preempts California’s unconscionability rule prohibiting class waivers in consumer arbitration agreements. In deciding Valencia’s appeal from the trial court’s denial of the motion to compel arbitration, the Court of Appeal declined to address whether the class waiver was enforceable and instead held that the arbitration appeal provision and the arbitration agreement as a whole were unconscionably one-sided. Valencia sought our review, relying on Concepcion.
While circumscribing the ability of states to regulate the fairness of arbitration agreements, Concepcion reaffirmed that the FAA does not preempt “ ‘generally applicable contract defenses, such as fraud, duress, or unconscionability.’ ” (Concepcion, supra, 563 U.S. at p. 339 [131 S.Ct. at p. 1746].) Under the FAA, these defenses may provide grounds for invalidating an arbitration agreement if they are enforced evenhandedly and do not “interfere[] with fundamental attributes of arbitration.” (Concepcion, at p. 344 [131 S.Ct. at p. 1748]; see Sonic-Calabasas A, Inc. v. Moreno (2013) 57 Cal.4th 1109, 1143-1145 [163 Cal.Rptr.3d 269, 311 P.3d 184] (we will use *907 the more common name, Sonic IF).) In the present case, we hold that Concepcion requires enforcement of the class waiver but does not limit the unconscionability rules applicable to other provisions of the arbitration agreement. Applying those rules, we agree with Valencia that the Court of Appeal erred as a matter of state law in finding the agreement unconscionable. Accordingly, we reverse the judgment below.
I.
Plaintiff Gil Sanchez filed this class action in March 2010. Two months later, Sanchez filed a first amended complaint. The complaint arises from Sanchez’s purchase of a 2006 “preowned” Mercedes-Benz S500V in 2008 for $53,498.60. Sanchez alleged that Valencia violated the Consumers Legal Remedies Act (CLRA) (Civ. Code, §§ 1750-1784) by making false representations about the condition of the automobile. Sanchez also alleged that Valencia violated several other California laws by (1) failing to separately itemize the amount of the down payment that is deferred to a date after the execution of the sale contract, (2) failing to distinguish registration, transfer, and titling fees from license fees, (3) charging the optional Department of Motor Vehicles electronic filing fee without discussing it or asking if he wanted to pay it, (4) charging new tire fees for used tires, and (5) requiring him to pay $3,700 to have the vehicle certified so he could qualify for the 4.99 percent interest rate, when that payment was actually for an optional extended warranty unrelated to the interest rate. Sanchez alleged violations of the Automobile Sales Finance Act (Civ. Code, §§ 2981-2984.6), the unfair competition law (UCL) (Bus. & Prof. Code, §§ 17200-17210), the Song-Beverly Consumer Warranty Act (Civ. Code, §§ 1790-1795.8), and Public Resources Code section 42885.
The complaint further alleged that a class action was appropriate based on the large number of putative class members who have suffered similar violations, the predominance of common questions of law and fact, the typicality of the claims, and the superiority and benefits of class litigation. He proposed four distinct classes based on the different types of violations Valencia allegedly committed.
Valencia filed a motion to compel arbitration pursuant to an arbitration clause in the sales contract that authorized- either party to have any dispute between the parties decided by arbitration. The arbitration clause had a class action waiver: “If a dispute is arbitrated, you will give up your right to participate as a class representative or class member on any class claim you may have against us including any right to class arbitration or any consolidation of individual arbitrations.”
*908 The arbitration clause further provided: “Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law in maiding an award. The arbitration hearing shall be conducted in the federal district in which you reside .... We will advance your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $2500, which may be reimbursed by decision of the arbitrator at the arbitrator’s discretion. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. . . . Arbitrator’s award shall be final and binding on all parties, except that in the event the arbitrator’s award for a party is $0 or against a party is in excess of $100,000, or includes an award of injunctive relief against a party, that party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel. The appealing party requesting new arbitration shall be responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs. Any arbitration under this Arbitration Clause shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.) and not by any state law concerning arbitration.
“You and we retain any rights to self-help remedies, such as repossession. You and we retain the right to seek remedies in small claims court for disputes or claims within that court’s jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit. Any court having jurisdiction may enter judgment on the arbitrator’s award. This Arbitration Clause shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Clause, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Clause shall be unenforceable.”
As the Court of Appeal summarized: “The Sale Contract is a preprinted document consisting of one page, 8 1/2 inches wide and 26 inches long. There are provisions on both sides that occupy the entire document, leaving little in the way of margins. Sanchez signed or initialed the front in eight places, each related to a different provision. No signatures, initials, or other handwriting appears on the back. The arbitration provision, entitled ‘ARBITRATION CLAUSE,’ is on the back at the bottom of the page, outlined by a black box. It is the last provision of the Sale Contract concerning the purchase transaction; a provision related to the assignment of the contract appears below it. The buyer’s final signature appears near the bottom on the front side.”
*909 In opposing arbitration, Sanchez submitted a declaration that said: “When I signed the documents related to my purchase of the Subject Vehicle, I was presented with a stack of documents, and was simply told by the Dealership’s employee where to sign and/or initial each one. All of the documents (including the purchase contracts) were pre-printed form documents. When I signed the documents, I was not given an opportunity to read any of the documents, nor was I given an opportunity to negotiate any of the pre-printed terms. The documents were presented to me on a take-it-or-leave-it basis, to either sign them or not buy the car. . . . There was no question of choice on my part or of my being able to ‘negotiate’ anything. And I had no reason to suspect that hidden on the back of the contracts . . . was a section that prohibited me from being able to sue the Dealership in court if I had a problem.
“. . . When I signed the purchase contract and related documents, the Dealership did not ask me if I was willing to arbitrate any disputes with it, did not tell me that there was an ‘arbitration clause’ on the back side of the purchase contract, and I did not see any such clause before I signed the documents. The Dealership did not explain to me what an arbitration clause was. I was not given any opportunity at any time during my transaction with [the] Dealership to negotiate whether or not I would agree to arbitrate any potential disputes. I was not given an option whether to sign a contract with an arbitration clause or one without.”
The trial court denied the motion to compel arbitration. It held the class waiver unenforceable on the ground that the CLRA expressly provides for class action litigation and declares the right to a class action to be unwaivable. (See Civ. Code, §§ 1751, 1781.) Because the arbitration clause provided that “[i]f a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Clause shall be unenforceable,” the court denied the motion to compel arbitration.
After the trial court’s decision but before the Court of Appeal’s opinion in this case was filed, the United States Supreme Court in Concepcion, supra, 563 U.S. 333 [131 S.Ct. 1740] held that the FAA requires enforcement of class waivers in consumer arbitration agreements and preempts state law to the contrary. The Court of Appeal declined to decide whether the class waiver at issue was enforceable and instead affirmed the trial court’s decision on different grounds. First, the court concluded that the agreement contained elements of procedural unconscionability, both oppression and surprise. Second, the court held that four provisions made the agreement unfairly one-sided in favor of Valencia. “First, a party who loses before the single arbitrator may appeal to a panel of three arbitrators if the award exceeds *910 $100,000. Second, an appeal is permitted if the award includes injunctive relief. Third, the appealing party must pay, in advance, ‘the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs.’ Fourth, the provision exempts repossession from arbitration while requiring that a request for injunctive relief be submitted to arbitration. Although these provisions may appear neutral on their face, they have the effect of placing an unduly oppressive burden on the buyer.” We granted review.
II.
To aid understanding of the issues in this case, we begin by discussing general principles of unconscionability. “ ‘One common formulation of unconscionability is that it refers to “ ‘an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.’ ” [Citation.] As that formulation implicitly recognizes, the doctrine of unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results.’ ” (Sonic II, supra, 57 Cal.4th at p. 1133.)
“ ‘The prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.’ [Citation.] But they need not be present in the same degree. ‘Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves.’ [Citations.] In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.” (Armendariz v. Foundation Health Psychare Services, Inc. (2000) 24 Cal.4th 83, 114 [99 Cal.Rptr.2d 745, 6 P.3d 669] (Armendariz).) Courts may find a contract as a whole “or any clause of the contract” to be unconscionable. (Civ. Code, § 1670.5, subd. (a).)
As we stated in Sonic II: “The unconscionability doctrine ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as ‘ “ ‘overly harsh’ ” ’ (Stirlen v. Supercuts, Inc. (1997) 51 Cal.App.4th 1519, 1532 [60 Cal.Rptr.2d 138]), ‘ “unduly oppressive” ’ (Perdue v. Crocker National Bank (1985) 38 Cal.3d 913, 925 [216 Cal.Rptr. 345, 702 P.2d 503] (Perdue)), ‘ “so one-sided as to ‘shock the conscience’ ” ’ (Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC (2012) 55 Cal.4th 223, 246 [145 Cal.Rptr.3d 514, *911 282 P.3d 1217] (Pinnacle)), or ‘unfairly one-sided’ (Little [v. Auto Stiegler, Inc. (2003)] 29 Cal.4th [1064,] 1071 [130 Cal.Rptr.2d 892, 63 P.3d 979]). All of these formulations point to the central idea that unconscionability doctrine is concerned not with ‘a simple old-fashioned bad bargain’ (Schnuerle v. Insight Communications Co. (Ky. 2012) 376 S.W.3d 561, 575 (Schnuerle)), but with terms that are ‘unreasonably favorable to the more powerful party’ (8 Williston on Contracts (4th ed. 2010) § 18.10, p. 91). These include ‘terms that impair the integrity of the bargaining process or otherwise contravene the public interest or public policy; terms (usually of an adhesion or boilerplate nature) that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law, fine-print terms, or provisions that seek to negate the reasonable expectations of the nondrafting party, or unreasonably and unexpectedly harsh terms having to do with price or other central aspects of the transaction.’ (Ibid.)” (Sonic II, supra, 57 Cal.4th at p. 1145.) Because unconscionability is a contract defense, the party asserting the defense bears the burden of proof. (Id. at p. 1148.)
We further observed in Sonic II, and reaffirm today, that “an examination of the case law does not indicate that ‘shock the conscience’ is a different standard in practice than other formulations or that it is the one true, authoritative standard for substantive unconscionability, exclusive of all others.” (Sonic II, supra, 57 Cal.4th at p. 1159.) Nor do we see any conceptual difference among these formulations. Rather, “courts, including ours, have used various nonexclusive formulations to capture the notion that unconscionability requires a substantial degree of unfairness beyond ‘a simple old-fashioned bad bargain.’ ” (Id. at p. 1160, italics added.) This latter qualification is important. Commerce depends on the enforceability, in most instances, of a duly executed written contract. A party cannot avoid a contractual obligation merely by complaining that the deal, in retrospect, was unfair or a bad bargain. Not all one-sided contract provisions are unconscionable; hence the various intensifiers in our formulations: “overly harsh,” “unduly oppressive,” “unreasonably favorable.” (See Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC, supra, 55 Cal.4th at p. 246 [“A contract term is not substantively unconscionable when it merely gives one side a greater benefit . . . .”].) We clarify today that these formulations, used throughout our case law, all mean the same thing.
An evaluation of unconscionability is highly dependent on context. (See Williams v. Walker-Thomas Furniture Co. (D.C. Cir. 1965) 121 U.S. App.D.C. 315 [350 F.2d 445, 450] [“The test is not simple, nor can it be mechanically applied.”].) The doctrine often requires inquiry into the “commercial setting, purpose, and effect” of the contract or contract provision. (Civ. Code, § 1670.5, subd. (b); accord, Sonic II, supra, 57 Cal.4th at pp. 1147-1148; Walker-Thomas Furniture, at p. 450 [unconscionability must “be considered ‘in the light of the general commercial background and the *912 commercial needs of the particular trade or case’ ”].) As we have recognized, “ ‘a contract can provide a “margin of safety” that provides the party with superior bargaining strength a type of extra protection for which it has a legitimate commercial need without being unconscionable.’ ” (Armendariz, supra, 24 Cal.4th at p. 117; see Walker-Thomas Furniture, at p. 450 [“where no meaningful choice was exercised upon entering the contract,” the test is “whether the terms are ‘so extreme as to appear unconscionable according to the mores and business practices of the time and place’ ”].) And, as noted, the substantive unfairness of the terms must be considered in light of any procedural unconscionability. The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement.
Moreover, our unconscionability standard is, as it must be, the same for arbitration and nonarbitration agreements. (Concepcion, supra, 563 U.S. at p. 341 [131 S.Ct. at p. 1747].) Of course, unconscionability can manifest itself in different ways, depending on the contract term at issue. (See, e.g., Washington Mutual Bank v. Superior Court (2001) 24 Cal.4th 906, 916-917 [103 Cal.Rptr.2d 320, 15 P.3d 1071] [choice of law clause]; City of Santa Barbara v. Superior Court (2007) 41 Cal.4th 747, 777 [62 Cal.Rptr.3d 527, 161 P.3d 1095] [waivers of liability provision]; Moreno v. Sanchez (2003) 106 Cal.App.4th 1415, 1434 [131 Cal.Rptr.2d 684] [statutes of limitation provision]; Smith, Valentino & Smith, Inc. v. Superior Court (1976) 17 Cal.3d 491, 495-496 [131 Cal.Rptr. 374, 551 P.2d 1206] [forum selection clause].) But the application of unconscionability doctrine to an arbitration clause must proceed from general principles that apply to any contract clause. In particular, the standard for substantive unconscionability—the requisite degree of unfairness beyond merely a bad bargain—must be as rigorous and demanding for arbitration clauses as for any contract clause.
Valencia broadly contends that under Concepcion, “absent exceptional circumstances, states—either judicially or legislatively—may not, under the guise of unconscionability, judge the supposed fairness of the parties’ agreed arbitration process.” In support of that assertion, Valencia cites “the examples of arbitration-process unconscionability evaluations (ranging from discovery to evidentiary requirements) that the FAA precludes.” (See Concepcion, supra, 563 U.S. at pp. 341-342 [131 S.Ct. at p. 1747].)
We recently considered the effect of Concepcion on state law unconscionability doctrine and observed that “after Concepcion, unconscionability remains a valid defense to a petition to compel arbitration.” (Sonic II, supra, 51 Cal.4th at p. 1142; id. at pp. 1142-1143, citing Concepcion, supra, 563 U.S. at p. 339 [131 S.Ct. at p. 1746].) “What is new,” we said, “is that Concepcion clarifies the limits the FAA places on state unconscionability *913 rules as they pertain to arbitration agreements. It is well established that such rules must not facially discriminate against arbitration and must be enforced evenhandedly. Concepcion goes further to make clear that such rules, even when facially nondiscriminatory, must not disfavor arbitration as applied by imposing procedural requirements that ‘interfere[] with fundamental attributes of arbitration,’ especially its ‘ “lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes.” [Citation.]’ (Concepcion, supra, 563 U.S. at [p. 348] [131 S.Ct. at pp. 1748, 1751].)” (Sonic II, at p. 1143.)
We proceeded to give examples of “state law rules that do not ‘interfere[] with fundamental attributes of arbitration’ ” and thus “do not implicate Concepcion’s limits on state unconscionability rules.” (Sonic II, supra, 51 Cal.4th at p. 1143.) “In Little, for example, we found unconscionable a $50,000 threshold for an arbitration appeal that decidedly favored defendants in employment contract disputes. (Little [v. Auto Stiegler, Inc.], supra, 29 Cal.4th at pp. 1071-1074.)” (Id. at p. 1144.) As our reference to Little suggests, Concepcion does not immunize adhesive arbitration processes from state law unconscionability principles as broadly as Valencia contends.
Justice Chin says allowing multiple formulations to capture the notion of substantive unconscionability will undermine predictability and will subject arbitration and nonarbitration provisions of a contract to different standards. (Cone. & dis. opn., post, at p. 936.) But we have just made clear that all the formulations “mean the same thing” and “must be as rigorous and demanding for arbitration clauses as for any contract clause.” (Ante, at pp. 911, 912.) It seems the main reason Justice Chin favors “ ‘shock .the conscience’ ” as the sole formulation is that he believes it is a higher standard than the alternatives. (See cone. & dis. opn., post, at p. 936.) Adopting his approach, however, would call into question a number of cases where we have found substantive unconscionability under other formulations. (See, e.g., Little v. Auto Stiegler, Inc., supra, 29 Cal.4th at p. 1071 [“unfairly one-sided”]; Armendariz, supra, 24 Cal.4th at p. 114 [“ ‘ “overly harsh” ’ or ‘ “one-sided” ’ ”]; Graham v. Scissor-Tail, Inc. (1981) 28 Cal.3d 807, 820 [171 Cal.Rptr. 604, 623 P.2d 165] (Scissor-Tail) [“unduly oppressive”].) We see no reason to disturb our precedents, and we reject the view that “shock the conscience” is a higher standard.
We turn now to Valencia’s alternative argument that the arbitration agreement in this case was not unconscionable under state law.
III.
Valencia does not dispute that the contract was adhesive; at oral argument, Valencia said the contract “meets the definition of adhesive in *914 California.” Instead, Valencia argues that “adhesion contracts are not per se procedurally unconscionable,” noting that the car was a luxury item and that Sanchez was able to negotiate the price. Although Valencia says Sanchez has not shown he was unable to negotiate the arbitration provision (cone. & dis. opn., post, at p. 932), Valencia does not contend in this court that Sanchez could have opted out of the arbitration agreement or that he could have negotiated a sales contract without an arbitration agreement. Indeed, Valencia acknowledged at oral argument that “[m]any people who are not legally trained do not understand the vast majority of what is in this contract” and that “if you asked that dealer about everything other than the negotiable terms of price and interest, they probably don’t understand that either . . . .” Moreover, in the context of consumer contracts, we have never required, as a prerequisite to finding procedural unconscionability, that the complaining party show it tried to negotiate standardized contract provisions. (See, e.g., Discover Bank v. Superior Court (2005) 36 Cal.4th 148, 160 [30 Cal.Rptr.3d 76, 113 P.3d 1100], disapproved of on other grounds in Concepcion, supra, 563 U.S. 333 [131 S.Ct. 1740] [cardholder agreement in “bill stuffer” had an element of procedural unconscionability]; Perdue v. Crocker National Bank, supra, 38 Cal.3d at pp. 924-925 [signature card “offered to the customer without negotiation, is a classic example of the contract of adhesion”].) And although Valencia argues that 90 percent of the standardized contract was mandated by statute, it does not contend that the arbitration agreement was so mandated.
As in many consumer transactions involving standard form contracts, Sanchez apparently did not read the entirety of his contract, including the arbitration clause. (See Consumer Financial Protection Bur., Arbitration Study: Rep. to Congress, Pursuant to Dodd-Frank Wall Street Reform and Consumer Protection Act § 1028(a) (Mar. 2015) § 3, p. 19 [fewer than 7 percent of credit card consumers subject to predispute arbitration clauses knew that they could not sue in court]; cf. Madden v. Kaiser Foundation Hospitals (1976) 17 Cal.3d 699, 710 [131 Cal.Rptr. 882, 552 P.2d 1178] [applying “the general rale that one who assents to a contract is bound by its provisions and cannot complain of unfamiliarity with [its] language” to a nonadhesive health care contract negotiated by the Board of Administration of the State Employees Retirement System on the plaintiff’s behalf].)
On the other hand, Valencia was under no obligation to highlight the arbitration clause of its contract, nor was it required to specifically call that clause to Sanchez’s attention. Any state law imposing such an obligation would be preempted by the FAA. (See Doctor’s Associates, Inc. v. Casarotto (1996) 517 U.S. 681, 684, 687-688 [134 L.Ed.2d 902, 116 S.Ct. 1652] [holding state statute requiring arbitration clause to be in underlined capital letters on the first page of a contract is preempted]; but see Concepcion, supra, 563 U.S. at p. 347, fn. 6 [131 S.Ct. at p. 1750, fn. 6] [“States remain free to *915 take steps addressing the concerns that attend contracts of adhesion—for example, requiring class-action-waiver provisions in adhesive arbitration agreements to be highlighted.”].) Furthermore, we have held that even when a customer is assured it is not necessary to read a standard form contract with an arbitration clause, “it is generally unreasonable, in reliance on such assurances, to neglect to read a written agreement before signing it.” (Rosenthal v. Great Western Fin. Securities Corp. (1996) 14 Cal.4th 394, 424 [58 Cal.Rptr.2d 875, 926 P.2d 1061].)
Here the adhesive nature of the contract is sufficient to establish some degree of procedural unconscionability. Yet “a finding of procedural unconscionability does not mean that a contract will not be enforced, but rather that courts will scrutinize the substantive terms of the contract to ensure they are not manifestly unfair or one-sided.” (Gentry v. Superior Court (2007) 42 Cal.4th 443, 469.) We now address each of Sanchez’s claims of substantive unconscionability.
A.
The arbitration agreement in this case provides that an arbitrator’s award “shall be final and binding on all parties, except that in the event the arbitrator’s award for a party is $0 or against a party is in excess of $100,000, or includes an award of injunctive relief against a party, that party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel.” Valencia challenges the Court of Appeal’s holding that this provision was unreasonably one-sided and unenforceable.
In Little, we unanimously found unconscionable an employment contract provision that permitted an appeal to a second arbitrator only if the arbitral award was greater than $50,000. (Little v. Auto Stiegler, Inc., supra, 29 Cal.4th at p. 1073 (Little); id. at p. 1085 (cone. & dis. opn. of Baxter, J.); id. at p. 1089 (cone. & dis. opn. of Brown, J.). In so concluding, we discussed with approval two pertinent Court of Appeal cases. In Beynon v. Garden Grove Medical Group (1980) 100 Cal.App.3d 698, 706 [161 Cal.Rptr. 146] (Beynon), the court found unconscionable a provision of a mandatory arbitration agreement between a medical group and a patient that authorized the medical group, but not the patient, to reject the first arbitration award and submit the dispute to a second arbitration panel. In Saika v. Gold (1996) 49 Cal.App.4th 1074 [56 Cal.Rptr.2d 922] (Saika), the court found unconscionable a provision in a doctor-patient agreement that allowed a party to request a trial de novo in superior court when the award was over $25,000, “The [Saika] court rejected the doctor’s argument that the case was distinguished from Beynon because the challenged arbitration provision permitted either party to request a trial de novo if the award exceeded the stated amount. ‘ [I]n the vernacular of late *916 20th century America, let us “get real.” As a practical matter, the benefit which the trial de novo clause confers on patients is nothing more than a chimera. The odds that an award will both (a) clear the $25,000 threshold but (b) still be so low that the patient would want to have a trial de novo are so small as to be negligible. Unless we are to assume that arbitrators in medical malpractice cases regularly and capriciously make awards substantially below what justice requires — and that is an assumption which we will not indulge— the cases where the trial de novo clause could possibly benefit the patient are going to be rare indeed.’ ” (Little, at pp. 1072-1073, quoting Saika, at p. 1080.)
The employer in Little attempted to distinguish these cases on the ground that “an arbitration appeal is less objectionable than a second arbitration, as in Beynon, or a trial de novo, as in Saika, because it is not permitting a wholly new proceeding, making the first arbitration illusory, but only permitting limited appellate review of the arbitral award.” (Little, supra, 29 Cal.4th at pp. 1073-1074.) Rejecting this argument, we said: “We fail to perceive a significant difference. Each of these provisions is geared toward giving the arbitral defendant a substantial opportunity to overturn a sizable arbitration award.” (Id. at p. 1074.)
Valencia argues that the present agreement is distinguishable from Little in three respects. First, it provides that a party who is awarded nothing may appeal. Second, the upper threshold for an appeal is $100,000 instead of $50,000. Third, this is an auto sales agreement, not an employment contract. According to Valencia, because the purchase price of an automobile averages around $30,000, the vast majority of awards are below $100,000, in contrast to typically greater awards in employment cases. (See, e.g., Roitz v. Coldwell Banker Residential Brokerage Co. (1998) 62 Cal.App.4th 716, 721, 726 [73 Cal.Rptr.2d 85] [upholding a $260,000 arbitral award for wrongful termination].) Thus, Valencia contends, both an award of $0 and an award greater than $100,000 are outliers in disputes between automobile buyers and sellers, so the appeal thresholds are not significantly more beneficial to the seller, who is likely to be the defendant, than to the buyer, who is likely to be the plaintiff.
We agree with Valencia that the appeal threshold provision does not, on its face, obviously favor the drafting party. Assuming, as the parties do, the likely scenario of the buyer as the pláintiff and the seller as the defendant, the unavailability of an appeal from an award that is greater than $0 but not greater than $100,000 means that the buyer may not appeal from a non-$0 award that he or she believes to be too small, nor may the seller appeal from a quite substantial award (up to $100,000) that it believes to be too big. It may be reasonable to assume that the ability to appeal a $0 award will favor *917 the buyer, while the ability to appeal a $100,000 or greater award will favor the seller. But nothing in the record indicates that the latter provision is substantially more likely to be invoked than the former. We cannot say that the risks imposed on the parties are one-sided, much less unreasonably so.
As to the contract term providing that only arbitral grants of injunctive relief are subject to a second arbitration, Valencia notes that car sellers sometimes must seek an injunction in order to repossess a car from the buyer. But Valencia acknowledged at oral argument that overall the car buyer is more likely than the seller to seek injunctive relief. Nevertheless, we find significant Valencia’s concern that the scope of an injunction can extend well beyond the transaction at issue and can compel a car seller to change its business practices. Because of the broad impact that injunctive relief may have on the car seller’s business, the additional arbitral review when such relief is granted furnishes “ ‘a “margin of safety” that provides the party with superior bargaining strength a type of extra protection for which it has a legitimate commercial need.’ ” (Armendariz, supra, 24 Cal.4th at p. 117.) The potentially far-reaching nature of an injunctive relief remedy, which Sanchez does not dispute, is sufficiently apparent here to justify the extra protection of additional arbitral review.
Of course, apart from the parties’ particular interests, the public has a strong interest in ensuring that fraudulent business practices are enjoined. In Broughton v. Cigna Healthplans (1999) 21 Cal.4th 1066, 1082-1084 [90 Cal.Rptr.2d 334, 988 P.2d 67], and Cruz v. PacifiCare Health Systems, Inc. (2003) 30 Cal.4th 303, 316 [133 Cal.Rptr.2d 58, 66 P.3d 1157], we held that claims seeking injunctive relief designed to protect the public by stopping ongoing practices unlawful under the CLRA and the UCL, respectively, were inarbitrable. Valencia argues that Broughton and Cruz are no longer good law in light of Concepcion. (See Ferguson v. Corinthian Colleges, Inc. (9th Cir. 2013) 733 F.3d 928, 932-937.) The Court of Appeal below did not address whether Broughton or Cruz has been abrogated, and Sanchez takes no position on the issue in this appeal, focusing instead on the asymmetry of affording arbitral appeals to grants but not denials of injunctive relief. We likewise do not address the continued viability of Broughton and Cruz in this case.
B.
The Court of Appeal also held that the provision concerning appellate arbitration filing fees and costs contributed to the unconscionability of the arbitration agreement. As noted, the arbitration clause provides that Valencia will advance the car buyer’s filing, administration, service, and case management fees and arbitrator or hearing fees “up to a maximum of $2500, which *918 may be reimbursed” at the arbitrator’s discretion. The clause also provides that in case of an appeal to a three-arbitrator panel, the appealing party “shall be responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs.” The Court of Appeal held that this latter provision is inadequate for consumers “ ‘who cannot afford to initiate the [appeal] process in the first place’ ” given large arbitration costs. “Items covered by an appeal payment made in advance include, as stated in the Sale Contract, ‘the filing fee and other arbitration costs.’ Arbitrator fees in Los Angeles average around $450 per hour. [Citation.]” Contrasting this arbitral scheme with the American Arbitration Association rules, which do not require consumers to front arbitration fees, the Court of Appeal concluded that “[t]he requirement that the appealing party pay the filing fee and arbitration costs of both parties in advance puts an unduly harsh burden on the buyer.”
In the context of mandatory employment arbitration of unwaivable statutory rights, we have held that arbitration agreements “cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court.” (Armendariz, supra, 24 Cal.4th at pp. 110-111.) In the area of consumer arbitration, the Legislature has addressed costs in a different way. In 2002, shortly after Armendariz was decided, the Legislature enacted Code of Civil Procedure section 1284.3 to address fees and costs in consumer arbitration. Subdivision (a) of section 1284.3 provides that “[n]o neutral arbitrator or private arbitration company shall administer a consumer arbitration under any agreement or rule requiring that a consumer who is a party to the arbitration pay the fees and costs incurred by an opposing party if the consumer does not prevail in the arbitration, including, but not limited to, the fees and costs of the arbitrator, provider organization, attorney, or witnesses.” Most pertinently, section 1284.3, subdivision (b)(1) provides that “[a]ll fees and costs charged to or assessed upon a consumer party by a private arbitration company in a consumer arbitration, exclusive of arbitrator fees, shall be waived for an indigent consumer. For the purposes of this section, ‘indigent consumer’ means a person having a gross monthly income that is less than 300 percent of the federal poverty guidelines. Nothing in this section shall affect the ability of a private arbitration company to shift fees that would otherwise be charged or assessed upon a consumer party to a nonconsumer party.” Subdivision (b)(2) requires the arbitration provider to give notice of the fee waiver provision, and subdivision (b)(3) provides that “[a]ny consumer requesting a waiver of fees or costs may establish his or her eligibility by making a declaration under oath on a form provided to the consumer by the private arbitration company for signature stating his or her monthly income and the number of persons living in his or her household. No private *919 arbitration company may require a consumer to provide any further statement or evidence of indigence.” (Code Civ. Proc., § 1284.3, subd. (b)(2) & (3).)
The legislative history shows that the statute’s specific provisions were part of a general concern about the affordability of arbitration: “One of the primary arguments advanced in support of mandatory consumer arbitration is that it is less costly than civil litigation. However, this argument is cast into significant doubt by the available evidence. In fact, arbitration costs are so high that many people drop their complaints because they can’t afford to pursue them, a recent study by Public Citizen found.” (Assem. Floor Analysis of Sen. Amends, to Assem. Bill No. 2915 (Reg. Sess. 2001-2002) as amended Aug. 26, 2002, p. 2.) The analysis observed that “unlike civil court, private arbitration is subject to no fee limitations. As a result, access to the system may be greatly affected by the wealth of the consumer. The author states that this bill addresses these inequities by prohibiting large private judging companies from conducting mandatory consumer arbitrations where a consumer who loses the case must pay the winning company’s fees and costs. This bill also implements a fee waiver policy for indigent consumers akin to the long-standing practice in public courts. This bill does not affect commercial arbitrations between businesses.” (Ibid.)
As noted in Gutierrez v. Autowest, Inc. (2003) 114 Cal.App.4th 77 [7 Cal.Rptr.3d 267] (Gutierrez), on which the Court of Appeal below relied, the Legislature in enacting Code of Civil Procedure section 1284.3 “did not adopt the Armendariz categorical approach and direct that all administrative fees be paid by nonconsumer parties without regard to the size of the costs or the wealth of the consumer. . . . [T]he Legislature did adopt an ability-to-pay approach, which, though limited in this statute to indigents, provides direction for a rule applicable to all consumers faced with arbitral forum fees that are prohibitively high. In Armendariz the court signaled its deference to the Legislature in selecting a categorical rule. (Armendariz, supra, 24 Cal.4th at pp. 112-113.) In this consumer case, that same deference leads us to adopt a case-by-case determination of affordability: plaintiffs suing under the [consumer protection] statutes may resist enforcement of an arbitration agreement that imposes unaffordable fees.” (Gutierrez, at pp. 97-98.)
We agree with Gutierrez’s approach. As Gutierrez said in distinguishing Armendariz’s categorical rule in the employment context, “jobseekers are more likely to face ‘particularly acute’ economic pressure to sign an employment contract with a predispute arbitration provision, ‘for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement.’ (Armendariz, supra, 24 Cal.4th at p. 115.) A family in search of a job confronts a very different set of burdens than one seeking a new *920 vehicle. Consumers, who face significantly less economic pressure[,] would seem to require measurably less protection.” (Gutierrez, supra, 114 Cal.App.4th at p. 97.) In enacting Code of Civil Procedure section 1284.3, the Legislature concluded that an ability-to-pay approach is appropriate in the context of consumer arbitration agreements. Although the statute specifically addresses the affordability of consumer arbitration for people who are indigent, high arbitration fees can be unaffordable for nonindigent as well as indigent consumers, and nothing in the statute’s text or legislative history precludes courts from using unconscionability doctrine on a case-by-case basis to protect nonindigent consumers against fees that unreasonably limit access to arbitration. (See Sonic II, supra, 57 Cal.4th at p. 1145 [endorsing Gutierrez’s view that unaffordable arbitration costs that “ ‘effectively blocks every forum for the redress of disputes’ ” may render an arbitration agreement unconscionable].)
In the present case, the arbitration agreement did not have to provide for an appeal. But having done so, the agreement may not structure the appeal process so that it unreasonably favors one party, just as the agreement may not authorize only one party and not the other to take an appeal. (Little, supra, 29 Cal.4th at pp. 1073-1074.) We agree with the Court of Appeal below that a requirement that a consumer front any appellate filing fees or other arbitration costs—recall that an appeal here requires not one but three arbitrators—has the potential to deter the consumer from using the appeal process. But given the Legislature’s approach to the affordability of consumer arbitration, the provision cannot be held unconscionable absent a showing that appellate fees and costs in fact would be unaffordable or would have a substantial deterrent effect in Sanchez’s case. (See Gutierrez, supra, 114 Cal.App.4th at pp. 90-91.)
Moreover, courts are required to determine the unconscionability of the contract “at the time it was made.” (Civ. Code, § 1670.5.) In light of this requirement, we recently clarified the proper affordability inquiry in Sonic II in the context of employment arbitration: “Because a predispute arbitration agreement is an agreement to settle future disputes by arbitration, the proper inquiry is what dispute resolution mechanism the parties reasonably expected the employee to be able to afford. Absent unforeseeable (and thus not reasonably expected) circumstances, there is no reason to think that what an employee can afford when a wage dispute arises will materially differ from the parties’ understanding of what the employee could afford at the time of entering the agreement.” (Sonic II, supra, 57 Cal.4th at p. 1164.) The same principle applies to consumer arbitration.
Justice Chin says American Express Co. v. Italian Colors Restaurant (2013) 570 U.S._,_ -___ [186 L.Ed.2d 417, 133 S.Ct. 2304, 2310-2311] *921 (Italian Colors) entails that “if a cost provision does not impose fees that ‘make access to the forum impracticable’ [citation], then the FAA precludes a court from invalidating it as unconscionable because of a subjective determination that it will, in a particular case, ‘have a substantial deterrent effect’ on a party’s exercise of the right to request a second arbitration.” (Cone. & dis. opn., post, at p. 942.) But it is not clear that the notion of “impracticab[ility]” mentioned in passing in Italian Colors (Italian Colors, at p._[133 S.Ct. at p. 2311]) differs from “a substantial deterrent effect” (ante, at p. 920). In any event, we explained in Sonic II that Italian Colors reaffirmed the principle stated in Concepcion that “[w]here a state law rule interferes with fundamental attributes of arbitration, the FAA preempts the state law rule even if the rule is designed to facilitate prosecution of certain kinds of claims.” (Sonic II, supra, 57 Cal.4th at p. 1157.) Neither Concepcion nor Italian Colors precludes states from ensuring, through rules that do not interfere with arbitration’s fundamental attributes, that the arbitral scheme set forth in a contract is in practice “an accessible, affordable process for resolving . . . disputes.” (Sonic II, at p. 1158.)
The dispute in this case concerns a high-end luxury item. Sanchez does not claim, and no evidence in the record suggests, that the cost of appellate arbitration filing fees were unaffordable for him, such that it would thwart his ability to take an appeal in the limited circumstances where such appeal is available. We therefore conclude on the record before us that the arbitral appeal fee provision is not unconscionable.
C.
The arbitration agreement further provides: “You and we retain any rights to self-help remedies, such as repossession.” The Court of Appeal held that this provision also contributed to the unconscionability of the arbitration agreement. We disagree.
The Court of Appeal explained its conclusion as follows: “By exempting repossession—to which only the car dealer would resort—from arbitration, while subjecting a request for injunctive relief—the buyer’s comparable remedy—to arbitration, the Sale Contract creates an unduly oppressive distinction in remedies. This is especially so given that the California Arbitration Act (Code Civ. Proc., §§ 1280-1294.2) exempts preliminary injunctions from arbitration, allowing an application for ‘provisional’ remedies to be filed directly in court (id., § 1281.8, subd. (b)). Nevertheless, the Sale Contract dictates otherwise. As several courts have held, arbitration provisions are unconscionable if they provide for the arbitration of claims most likely to be brought by the weaker party but exempt from arbitration claims most likely to be filed by the stronger party.”
*922 As an initial matter, the arbitration agreement does not appear to preclude provisional injunctive relief authorized by statute. Code of Civil Procedure section 1281.8, subdivisions (a) and (b) authorize a court to issue before arbitration “a provisional remedy . . . upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without provisional relief.” (Code Civ. Proc., § 1281.8, subd. (b).) Although the arbitration agreement in the present case provides that the arbitration is to be governed by the FAA and not California law, generally the California Arbitration Act governs arbitral procedures brought in California courts. (See Cronus Investments, Inc. v. Concierge Services (2005) 35 Cal.4th 376, 389-390 [25 Cal.Rptr.3d 540, 107 P.3d 217].) Even if FAA procedures apply, federal courts have concluded that a court may “issue interim injunctive relief on arbitrable claims if interim relief is necessary to preserve the status quo and the meaningfulness of the arbitration process.” (Toyo Tire Holdings v. Continental Tire North America (9th Cir. 2010) 609 F.3d 975, 981, and cases cited therein.) Regardless of whether an arbitration agreement could deprive a court of the power to grant preliminary injunctive relief, the present agreement does not do so. It addresses injunctive relief in connection with the relief granted by the arbitrator, subjecting such a remedy to review by a panel of three arbitrators. The agreement does not purport to limit a court’s power to issue preliminary injunctive relief to preserve the status quo pending a final judgment.
Moreover, we see nothing unconscionable about exempting the self-help remedy of repossession from arbitration. First, although this remedy is favorable to the drafting party, the contract provision that preserves the ability of the parties to go to small claims court likely favors the car buyer. Second, arbitration is intended as an alternative to litigation, and the unconscionability of an arbitration agreement is viewed in the context of the rights and remedies that otherwise would have been available to the parties. (See Sonic II, supra, 57 Cal.4th at pp. 1146-1148.) Self-help remedies are, by definition, sought outside of litigation, and they are expressly authorized by statute. Commercial Code section 9609, subdivisions (a)(1) and (b)(2) authorize a secured creditor “[ajfter default” to “[t]ake possession of the collateral” “[wjithout judicial process, if it proceeds without breach of the peace.” Civil Code sections 2983.2 and 2983.3 set forth the requirements for post-repossession notice and opportunity to cure default in the case of automobile loans. Moreover, it is undisputed that the remedy of repossession of collateral is an integral part of the business of selling automobiles on credit and fulfills a “ ‘legitimate commercial need.’ ” (Armendariz, supra, 24 Cal.4th at p. 117.) We thus conclude that the exclusion of such a remedy from an arbitration agreement, while favorable to Valencia, is not unconscionable.
*923 IV.
The trial court held, prior to Concepcion, that the class waiver was unconscionable and invalidated the entire arbitration agreement based on a poison pill provision that said: “If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Clause shall be unenforceable.” The Court of Appeal, deciding the case after Concepcion, took no position on the enforceability of the class waiver. Sanchez now advances several arguments for why the trial court’s decision was correct, but none is persuasive.
In Discover Bank v. Superior Court, supra, 36 Cal.4th 148, we announced a rule that class arbitration waivers in consumer contracts are unconscionable when they are found “in a setting in which disputes between the contracting parties predictably involve small amounts of damages and, when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money.” (Id. at pp. 162-163.) This rule was abrogated by Concepcion, supra, 563 U.S. at p. 352 [131 S.Ct. at p. 1753]; see Sonic II, supra, 57 Cal.4th at pp. 1137-1139.) As noted, the imposition of class action arbitration or litigation interferes “with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA.” (Concepcion, supra, 563 U.S. at p. 344 [131 S.Ct. at p. 1748].) To find the class waiver here unconscionable would run afoul of Concepcion.
Sanchez correctly notes that the CLRA sets forth a number of unwaivable rights, including the right to a class action. The antiwaiver provision is found in Civil Code section 1751: “Any waiver by a consumer of the provisions of this title is contrary to public policy and shall be unenforceable and void.” Civil Code section 1780 permits the consumer damaged by certain enumerated practices to seek various remedies including damages and injunctive relief. Civil Code section 1781, subdivision (a) provides: “Any consumer entitled to bring an action under Section 1780 may, if the unlawful method, act, or practice has caused damage to other consumers similarly situated, bring an action on behalf of himself and such other consumers to recover damages or obtain other relief as provided for in Section 1780.” Thus, class actions are among the provisions of the CLRA that may not be waived. (See Fisher v. DCH Temecula Imports LLC (2010) 187 Cal.App.4th 601, 613 [114 Cal.Rptr.3d 24].)
Nonetheless, Concepcion’s rule that states may not require a procedure that interferes with fundamental attributes of arbitration, “even if it is desirable for unrelated reasons” (Concepcion, supra, 563 U.S. at p. 351 *924 [131 S.Ct. at p. 1753]), applies equally to requirements imposed by statute or judicial rule. We conclude that the CLRA’s antiwaiver provision is preempted insofar as it bars class waivers in arbitration agreements covered by the FAA. Sanchez’s argument that enforcing the CLRA’s antiwaiver provision merely puts arbitration agreements on an equal footing with other contracts is unavailing. Concepcion held that a state rule can be preempted not only when it facially discriminates against arbitration but also when it disfavors arbitration as applied. (Concepcion, supra, 563 U.S. at pp. 341-342 [131 S.Ct. at pp. 1747].) Concepcion further held that a state rule invalidating class waivers interferes with arbitration’s fundamental attributes of speed and efficiency, and thus disfavors arbitration as a practical matter. (Id. at pp. 346-352 [131 S.Ct. at pp. 1750-1753].)
Finally, Sanchez contends that the language of the arbitration agreement— “If a waiver of class action rights is deemed or found to be unenforceable for any reason ... , the remainder of this Arbitration Clause shall be unenforceable” — means that once a class action waiver is deemed unenforceable, as the trial court ruled here, then the rest of the agreement is likewise unenforceable. But plainly the quoted provision was not meant to apply when a trial court erroneously holds the class waiver unenforceable and the error is corrected on appeal. Rather, the provision is most reasonably interpreted to permit the parties to choose class litigation over class arbitration in the event that the class waiver turns out to be legally invalid. Because we conclude in light of Concepcion that the FAA preempts the trial court’s invalidation of the class waiver on unconscionability grounds, the agreement’s poison pill provision is inoperable.
Conclusion
The judgment of the Court of Appeal is reversed, and the cause is remanded for proceedings not inconsistent with this opinion.
Cantil-Sakauye, C. J., Werdegar, J., Corrigan, J., Cuéllar, J., and Kruger, J., concurred.