Filed 5/20/26  Adams v. Strathspey Crown Holdings Group CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| WILLIAM P. ADAMS, JR., et al., | |
| Plaintiffs and Respondents, | G065188 |
| v. | (Super. Ct. No. 30-2024-01401374) |
| STRATHSPEY CROWN HOLDINGS GROUP, LLC et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from an order of the Superior Court of Orange County, Craig L. Griffin, Judge. Affirmed.

Stradling Yocca Carlson & Rauth, Stephen L. Ram, Micol Small, Vivian Bickford and Connor L. Kridle, for Defendants and Appellants.

Lewis & Llewellyn, Marc R. Lewis, Newton Oldfather and Bradley E. Estes, for Plaintiffs and Respondents.

Defendants Strathspey Crown Holdings Group, LLC, Crown Holdings, LLC, Robert Grant, and Vikram Malik appeal from the denial of their motion to compel arbitration. We agree with the trial court the arbitration agreement was unconscionable under California law, which we hold governs the agreement. We further find the court permissibly declined to compel arbitration on related claims pursuant to a separate agreement. We affirm.

FACTS

Plaintiffs[1] are individuals who became members of defendant Strathspey Crown Holdings Group, LLC, by purchasing "membership units" through three documents: a Subscription Agreement; a Private Placement Memorandum; and a Limited Liability Company Agreement.

Only the LLC Agreement contains an arbitration clause. It appears on the unnumbered 39th page of the 46-page agreement. It provides that "Each Member hereby irrevocably and unconditionally agrees to submit exclusively to binding arbitration . . . any dispute, controversy or claim between the parties," with an "exception" for "an action by either party seeking equitable . . . relief." It does not require the LLC or its managers to submit their disputes with members to arbitration.

The LLC Agreement has two choice of law provisions: a general one controlling contract interpretation and a specific one controlling arbitration. Paragraph 15.8 states: "Choice of Law. This Agreement shall be construed under the laws of the State of Delaware without regard to conflict of law principles." Paragraph 15.12 states: "Arbitration and Consent to

---

[1] The plaintiffs are Mitchell Brown, Frank Bumstead, Brad Calobrace, Harvey Carter, Sanjay Grover, Per Heden, Patrick Maxwell, David Mordaunt, Patrick Sullivan, and Simeon Wall, Jr.

Jurisdiction . . . [¶] . . . [¶] (c) . . . Any arbitration proceeding pursuant to this Agreement shall be determined pursuant to the laws of the State of California."

The LLC Agreement also contains terms the trial court labeled collectively a "'forfeiture' provision." They list events allowing Strathspey an "option to purchase all or any portion of" a plaintiff's investment, based on its "fair market value . . . as reasonably determined by the Managers in good faith." For example, if "[a] Member institutes or threatens to institute any legal action or proceeding against" Strathspey, its "Managers[,] or any of their Affiliates," Strathspey could unilaterally "purchase all or any portion of" an investment.

One of the plaintiffs, David Mordaunt, additionally signed a separate agreement with defendant Crown Holdings, LLC, which defendants describe as the "parent entity" of Strathspey. This Crown Holdings agreement contained its own arbitration clause.

Plaintiffs sued defendants for fraud, accounting, and other claims. Plaintiffs allege defendants Robert Grant and Vikram Malik were "at all relevant times . . . managing member[s] of" both Strathspey and Crown Holdings.

Defendants moved to compel arbitration. (Code Civ. Proc., § 1281.2.)[2] Plaintiffs opposed, asserting "the arbitration clause and LLC Agreement are unenforceable under California Law's unconscionability doctrine." They supported their opposition with a declaration from one of the plaintiffs stating "[t]he subscription agreement, the private placement memorandum, and . . . LLC Agreement were take it or leave them

---

[2] All undesignated statutory references are to this code.

3

agreements, imposed as a condition of investment in [Strathspey]. There was no opportunity for bargaining or negotiating the terms."

Defendants responded that plaintiffs "wrongly" relied on California unconscionability law because "on substantive issues of contract law, Delaware law governs based upon contractual choice of law provisions." They asserted in the alternative that the arbitration agreement was not unconscionable under California law, either. For plaintiff Mordaunt, defendants contended he should also be compelled to arbitrate because he signed the Crown Holdings agreement.

The trial court denied the defendants' motion. It found that the LLC Agreement's arbitration clause broadly covers Plaintiffs' "'dispute, controversy [and] claim[s],'" except for the "accounting claim" and "writ" application.

But the court also found the arbitration clause was unconscionable under "either Delaware or California law."

First, the court found the LLC Agreement's arbitration clause "was improperly buried" and "concealed[,] demonstrat[ing] a high degree of procedural unconscionability." It found the "Subscription Agreement" and Private Placement Memorandum "contained no arbitration clause," and the latter's "Summary of the LLC Agreement" "omitted any discussion of the arbitration clause . . . ." The court also noted that the LLC Agreement "stand-alone" signature page "did not reference any arbitration clause."

Next, the trial court found that because of the "high degree of procedural unconscionability, less substantive unconscionability is required." The court found the arbitration clause was substantively unconscionable because it "lacks mutuality," and "Defendants fail[ed] to explain why" non-mutuality analysis in employment law cases is inapt. It further found the

4

LLC Agreement's "'forfeiture' provision . . . demonstrates a gross imbalance of power."

Finally, the trial court found that plaintiff Mordaunt should not be compelled to arbitrate based on his separate Crown Holdings agreement. (§ 1281.2, subd. (c).) It reasoned the other plaintiffs' claims would not be arbitrated, Mordaunt's claims were sufficiently related to the other plaintiffs' claims, and there was "a possibility of conflicting rulings on a common issue of law or fact" if just Mordaunt was compelled to arbitrate. (*Ibid.*)

DISCUSSION

The Federal Arbitration Act (9 U.S.C. § 2; FAA) "'retains an external body of [state] law governing revocation,'" allowing arbitration agreements to be governed by state law that ""'arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.'"" (*McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945, 964.)

The initial question here is which state law governs the unconscionability analysis. While the trial court found the arbitration agreement was unconscionable under both California and Delaware law, we read Delaware law to be rather strict on that issue. (See *Ketler v. PFPA, LLC* (Del. 2016) 132 A.3d 746, 748 ["an unconscionable contract is one which 'no man in his senses and not under delusion would make on the one hand, and as no honest or fair man would accept, on the other'"].) It is not clear whether the arbitration agreement would be unconscionable under this test.

But we conclude California unconscionability law applies here. The Delaware choice of law provision applies only to contract interpretation of the LLC Agreement: "This Agreement shall be construed under the laws of the State of Delaware." But California law was chosen to govern arbitration: "Any arbitration proceeding . . . shall be determined pursuant to the laws of

5

the State of California." And Delaware law tells us "'"where specific and general provisions conflict, the specific provision ordinarily qualifies the meaning of the general one."'"" (*Thompson Street Capital Partners IV, L.P. v. Sonova United States Hearing Instruments, LLC* (Del. 2025) 340 A.3d 1151, 1166.) Thus, the specific choice of law provision for arbitration applies here.

Moreover, unconscionability is not a canon of construction for interpreting contracts; it is an "equitable matter" by which a contract is held "unenforceable." (*Pinela v. Neiman Marcus Group, Inc.* (2015) 238 Cal.App.4th 227, 240.) Unconscionability is not an investigation into what contract terms mean but instead "'is concerned with the relationship between the contracting parties and one-sided terms.'" (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 943 (conc. & dis. opn. of Chin, J.).) California codifies its unconscionability doctrine in the Civil Code title governing unlawful contracts, not the title governing contract interpretation. (Compare Civ. Code, div. 3, pt. 2, tit. 3 ["interpretation of contracts"] with *id.*, tit. 4 ["unlawful contracts," including § 1670.5 governing unconscionable contracts].)

Under California law, "[c]ourts apply a sliding scale analysis under which 'the more substantively oppressive [a] term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" (*Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 493 (*Ramirez*).) "Appellate review . . . is de novo if the evidence is not in conflict and the ruling is based entirely on an interpretation of law," though "substantial evidence review applies to the court's factual findings." (*Ibid.*)

"'Procedural unconscionability turns on adhesiveness,'" which is present here. (*Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.4th

6

638, 662.) "Some procedural unconscionability is present whenever an agreement 'is a contract of adhesion, i.e., a "standardized contract which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it."'" (*Fuentes v. Empire Nissan, Inc.* (2026) 19 Cal.5th 93, 103.) Adhesive contracts "contain a degree of procedural unconscionability even without any notable surprises." (*Ramirez, supra*, 16 Cal.5th at p. 494.) Here, a plaintiff adequately attested to "take it or leave them agreements, imposed as a condition of investment" with "no opportunity for bargaining or negotiating the terms."[3] Defendants submitted no contrary evidence showing any negotiation opportunities.

While adhesion is "'sufficient to establish some degree of procedural unconscionability,'" "[a] higher degree of procedural unconscionability may be established through an additional showing of oppression or surprise." (*Long Beach Unified School Dist. v. Margaret Williams, LLC* (2019) 43 Cal.App.5th 87, 103.) We agree with the court's express finding that the LLC Agreement's arbitration clause is "improperly buried" and "concealed" towards the end of the 46-page LLC Agreement. No arbitration clause was contained in the related Subscription Agreement or the Private Placement Memorandum. The "Summary of the LLC Agreement"

---

[3] Though the trial court did not mention adhesion in its ruling, defendants failed to request a statement of decision and so we apply "the doctrine of implied findings and presume[] the trial court made all necessary findings supported by substantial evidence." (*Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 237 [doctrine applies to arbitration rulings].) Plaintiffs did assert below the agreements were adhesive.

in the Private Placement Memorandum did not mention arbitration. And the LLC Agreement did not provide a signature line for the arbitration clause.[4]

Defendants' assertion that plaintiffs are "sophisticated, well-educated accredited investors" is misplaced. (Capitalization and boldface omitted.) "'The suggestion that a contract or clause cannot be unconscionable if it is accepted by a knowledgeable party has been repudiated by our Supreme Court.'" (*Abramson, supra,* 115 Cal.App.4th at pp. 662–663.)

The trial court also soundly found the arbitration agreement was substantively unconscionable. (*Ramirez, supra,* 16 Cal.5th at p. 493.) If anything, we find the arbitration agreement to have a higher degree of substantive unconscionability than did the trial court.

A lack of mutual agreement to arbitrate is the "'paramount consideration.'" (*Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th 1267, 1281.) The lack here is plain because the LLC Agreement explicitly states that only *members* agree "to submit exclusively to binding arbitration."

---

[4] We are unpersuaded by defendants' reliance on an older non-arbitration case for the proposition that adhesion adds zero procedural unconscionability when the plaintiff has market alternatives. While their cited case stated adhesion showed "little or no procedural unconscionability," it did not stop there but proceeded to "turn [its] analysis to substantive unconscionability." (*Morris v. Redwood Empire Bancorp* (2005) 128 Cal.App.4th 1305, 1322.) Subsequent cases have "reject[ed] the contention that the existence of market choice altogether negates the oppression aspect of procedural unconscionability." (*Gatton v. T-Mobile USA, Inc.* (2007) 152 Cal.App.4th 571, 583; accord *Shroyer v. New Cingular Wireless Services, Inc.* (9th Cir. 2007) 498 F.3d 976, 985 ["Although there is clearly some disagreement among the California Courts of Appeal over this issue [citations], we have consistently followed the courts that reject the notion that the existence of 'marketplace alternatives' bars a finding of procedural unconscionability"].)

There is no requirement of the LLC or its managers to submit their claims against members to arbitration.

Defendants' rely on *Ramirez, supra*, 16 Cal.5th at page 500, for the proposition that even if mutuality is lacking, substantive unconscionability requires an "absence of a justification for" the lack. They contend, for the first time on appeal, that the lack here is justified because "the company has no possible claims to assert against the members," so a "mutual arbitration obligation would be mere window dressing." *Ramirez* does not help them because, as here, the purported justification was forfeited. (*Ibid.* [justification that claims excluded from arbitration "'require[d] quick action'" presented untimely]; *Farrar v. Direct Commerce, Inc.* (2017) 9 Cal.App.5th 1257, 1275–1276, fn. 3 (*Farrar*) ["Merely because an issue is one of law, does not give a party license to raise it for the first time on appeal"].) In any event, defendants' justification is contradicted by the LLC Agreement, which, for example, allows the LLC and its managers "to enforce the requirements [of members] to make Capital Contributions."

The LLC Agreement's "'forfeiture'" provisions—or "redemption" clauses as defendants describe them—are also substantively unconscionable. The forfeiture provisions put fearsome teeth into the one-sided arbitration clause—members like plaintiffs who dare to assert claims in court are not

just forced into arbitration but risk losing their membership interests as well.[5]

Finally, the trial court permissibly declined to enforce the arbitration agreement in Mordaunt's separate contract with Crown Holdings.

Section 1281.2, subdivision (c) allows a court to deny an arbitration motion if three conditions are satisfied: (1) "A party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party," (2) the action or proceeding "aris[es] out of the same transaction or series of related transactions," and (3) "there is a possibility of conflicting rulings on a common issue of law or fact." (*Ibid.*) "We review an order denying arbitration pursuant to Code of Civil Procedure section 1281.2, subdivision (c) for an abuse of discretion." (*Abaya v. Spanish Ranch I, L.P.* (2010) 189 Cal.App.4th 1490, 1496 (*Abaya*).)

Here, the first condition was satisfied because Mordaunt's coplaintiffs and Strathspey each qualified as a "third party" in "a pending court action" in which Mordaunt was "also a party." (§ 1281.2, subd. (c).)

The second condition was satisfied because Mordaunt's separate claims under the Crown Holding agreement "aris[e] out of the same transaction or series of related transactions" as his coplaintiffs' claims. (See *Abaya, supra*, 189 Cal.App.4th at pp. 1498–1499 [analyzing pleadings to find common issues and possibility of conflicting rulings].) Plaintiffs allege a

---

[5] We reject defendants' belated reply contention that the trial court "contravened the FAA" by looking at contract terms outside the purported agreement to arbitrate. (*Farrar, supra*, 9 Cal.App.5th at pp. 1275–1276, fn. 3.) In any event, the contention would fail. "[T]he FAA does not require trial courts to ignore unconscionable provisions outside an arbitration agreement as a matter of federal substantive law." (*Wise v. Tesla Motors, Inc.* (2025) 117 Cal.App.5th 325, 336.)

10

general theory of commingling involving both Strathspey and Crown Holdings: "For twelve years, on information and belief, Grant and Malik regularly awarded themselves lucrative compensation packages, more than $500,000 a year for their work managing [Crown Holdings] and its parent [Strathspey]. . . . They awarded themselves compensation from both [Crown Holdings] and [Strathspey] for their work, and they repeatedly attempted to conceal their compensation by transferring funds between [Crown Holdings] and [Strathspey] and other controlled entities, mislabeling the payments as 'fees' or 'other' transfers." Defendants do not dispute defendants Grant and Malik controlled both defendants Strathspey and Crown Holdings, plaintiff Mordaunt invested in both LLCs, and that the LLCs maintained a parent-subsidiary relationship.

The third condition was satisfied because the possibility of conflicting rulings was, as the trial court aptly put it, "obvious." Plaintiffs allege a single overarching theory of "theft of investor funds by managers Robert Grant and Vikram Malik at Strathspey Crown Holdings, LLC and Strathspey Crown, LLC."

While defendants now contend the FAA preempts section 1281.2, subdivision (c), they forfeited the issue by failing to raise it below. (See *Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 997 [""Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider""].) In any event, section 1281.2, subdivision (c) "does not contravene the letter or the spirit of the FAA." (*Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 393; accord, *Los Angeles Unified School Dist. v. Safety National Casualty Corp.* (2017) 13 Cal.App.5th 471, 485 [affirming denial of motion to compel

11

arbitration].) And the Crown Holdings agreement does not even mention the FAA. (Cf. *Cronus*, at p. 394 ["FAA's procedural provisions" can be "*expressly* designate[d]"].)

## DISPOSITION

The order is affirmed. Plaintiffs shall recover their costs on appeal.

SCOTT, J.

WE CONCUR:


DELANEY, ACTING P. J.


BANCROFT, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.