Filed 11/2/15  Guerra v. Long Beach Care Center CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| PAOLO GUERRA, | B257157 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC518902) |
| v. | |
| LONG BEACH CARE CENTER, INC., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County. Kenneth Freeman, Judge.  Reversed with directions.

Magnanimo & Dean, Frank A. Magnanimo, Rebecca L. Gombos for Defendant and Appellant.

Mahoney Law Group, Kevin Mahoney for Plaintiff and Respondent.

_____

An employee signed an arbitration agreement, then filed a class action lawsuit against his employer. When the employer moved to compel arbitration, the trial court deemed the agreement unconscionable and denied the motion. We reverse. The arbitration agreement is not unconscionable, and a single improper sentence relating to arbitrator fees is severable.

## FACTS

For 46 days, Paolo Guerra was employed at Long Beach Care Center, Inc. (LBCC) as a laundry attendant. Guerra signed a two-page Mediation and Arbitration Agreement (the Agreement) on the day he was hired. He and LBCC agreed to arbitrate "any disputes [and] all claims," including "all employment and employment related matters," specifically "claims regarding wages, compensation or employment benefits, and any and all claims covered by any federal, state or local laws . . . ." The Agreement reads, "Both parties to this contract, by entering into it, are giving up their constitutional right to have any such dispute decide[d] in a court of law before a jury, and instead are accepting the use of mediation and arbitration."

One month after Guerra was hired, his attorney threatened LBCC with a class action lawsuit. He then filed a complaint alleging that LBCC failed to: pay overtime wages, provide meal and rest periods, keep accurate payroll records, or pay wages at the end of employment. He asserts that LBCC's conduct violated the Labor Code, and was an unfair or unlawful business practice.

LBCC moved to stay the lawsuit and compel arbitration because the Agreement covers all employment-related disputes and does not authorize class actions. LBCC asserted that Guerra expressly agreed to arbitrate his individual claims. No exception to arbitration applies, the Agreement is not unconscionable, and it meets legal standards for employment arbitration agreements.

In opposition, Guerra argued that the Agreement is unconscionable and adhesive, and some of his claims are not arbitrable. He declared that he was distracted by a training video when given the Agreement to review and sign. He did not understand the Agreement when he signed it.

2

The court found "no dispute that there was an agreement to arbitrate here." It also found that the Agreement is unconscionable. Procedural unconscionability was shown because the Agreement was presented on a "take it or leave it" basis with no opportunity for meaningful negotiation, and Guerra had to sign it to start work. This was oppressive. Guerra was surprised because he was "distracted" from reviewing the Agreement, and the Agreement does not specify any arbitration rules, identifying "California law" as the basis for dispute resolution.

Guerra also demonstrated substantive unconscionability. The Agreement is one-sided because it bars claimants who fail to pursue arbitration "with reasonable diligence," an undefined term. Other substantive provisions that are unconscionable include a one-sided manner of selecting and paying the arbitrator; also, the equal allocation of attorney fees and costs between the parties, unless the arbitrator rules that applicable law requires otherwise, undercuts a prevailing employee's right to recover fees under the Labor Code.

The court refused to sever unconscionable provisions or limit their application to avoid an unconscionable result because there is "more than one" unlawful provision in the Agreement. It denied LBCC's motion. LBCC appeals.

## DISCUSSION

### 1. Appeal and Review

The denial of LBCC's motion to compel is appealable. (Code Civ. Proc., § 1294, subd. (a); *Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332, 349.) If the extrinsic evidence is not in conflict, the trial court's refusal to compel arbitration presents a question of law. (*Suh v. Superior Court* (2010) 181 Cal.App.4th 1504, 1511-1512; *Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 174.) There is no conflicting extrinsic evidence in this case. Review is de novo.

### 2. Unconscionability

California has "a 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.'" (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9; *St. Agnes Medical Center v. PacifiCare of California* (2003) 31

3

Cal.4th 1187, 1204.) Consequently, the courts will indulge every intendment to give effect to arbitration contracts. (*Moncharsh*, at p. 9.) Any doubts concerning the construction of the contract, the scope of arbitrable issues, or defenses to arbitration should be resolved in favor of arbitration. (*Macaulay v. Norlander* (1992) 12 Cal.App.4th 1, 6.)

Once the party petitioning for arbitration shows the existence of an arbitration agreement, "the court shall order the petitioner and the respondent to arbitrate the controversy" unless there are grounds to revoke the agreement. (Code Civ. Proc., § 1281.2.) The party opposing arbitration bears the burden of proving any defenses, such as unconscionability. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle*); *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.)

A party of superior bargaining strength may impose a standardized contract that leaves the other party only the opportunity to adhere to the contract or reject it. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 113 (*Armendariz*).) Arbitration agreements imposed as a condition of employment leave no opportunity to negotiate: most people are not in a position to refuse a job because of an arbitration requirement. (*Id.* at pp. 114-115.)

Guerra was presented with multiple documents, including the Agreement, and declares, "I was [] told that I must sign the documents in order to start work." LBCC does not deny telling Guerra he must sign to start work. Because the Agreement was imposed "as a condition of employment and there was no opportunity to negotiate," it is adhesive. (*Armendariz*, *supra*, 24 Cal.4th at pp. 114-115.)

Adhesiveness alone does not make an arbitration contract unenforceable as a matter of law. (*McManus v. CIBC World Markets Corp.* (2003) 109 Cal.App.4th 76, 91.) If a contract is adhesive, the court then decides whether it is unenforceable because it was unconscionable at the time it was made. (Civ. Code, § 1670.5, subd. (a); *Armendariz*, *supra*, 24 Cal.4th at p. 113.) "'One common formulation of unconscionability is that it refers to '"an absence of meaningful choice on the part of one of the parties together with

4

contract terms which are unreasonably favorable to the other party.'"'" (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1133; *Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 910 (*Sanchez*).)

A contract must be *both* procedurally and substantively unconscionable to be unenforceable, though not to the same degree. "'[A] sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves.' [Citations] In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz*, *supra*, 24 Cal.4th at p. 114; *Sanchez*, *supra*, 61 Cal.4th at p. 910.)

a. *Procedural Unconscionability*

Procedural unconscionability focuses on oppression and surprise, due to unequal bargaining power. (*Armendariz*, *supra*, 24 Cal.4th at p. 114; *Sanchez*, *supra*, 61 Cal.4th at p. 910.) With respect to the element of "surprise," the Agreement was not hidden in the fine print of a lengthy contract. On the contrary, it is a conspicuous stand-alone document entitled "Mediation and Arbitration Agreement." Though he was handed other documents (including an employee handbook, tax forms, health, safety, confidentiality and training documents), there is no showing that Guerra was unaware of the Agreement.

Above Guerra's signature, in boldface capital letters, is the following: "I have been given a full opportunity to review and analyze this agreement and may have an attorney do so. I fully and completely understand all of the terms of this agreement and am signing it voluntarily, freely, and knowingly." A party may expressly consent to arbitrate by signing an agreement, and it "may be binding on a party even if the party never actually read the clause." (*Pinnacle*, *supra*, 55 Cal.4th at p. 236.) "'Reasonable diligence requires the reading of a contract before signing it. A party cannot use his own lack of diligence to avoid an arbitration agreement,'" and is bound regardless of whether he read it or was aware of it when the agreement was signed. (*Brookwood v. Bank of*

5

*America* (1996) 45 Cal.App.4th 1667, 1674; *24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1215; *Pinnacle*, *supra*, 55 Cal.4th at p. 236.)

Guerra did not declare that he failed to read the Agreement; rather, he states that "I did not understand [the] arbitration agreement when I signed it." If he did not understand it, he must have read it. The element of surprise is not present.

The Agreement specifies that the arbitrator(s) "shall apply applicable federal and/or California law. California law regarding the rules of evidence and discovery shall apply." The Agreement also indicates that "the arbitration shall be governed by the California Code of Civil Procedure relating to arbitration." The trial court found this to be procedurally unconscionable. Given this state's well-developed laws, we fail to see why the Agreement is unconscionable if "California law" governs arbitrations. There is no authority supporting the notion that state law is inadequate to the task. Indeed, if the parties fail to specify governing procedures, then the California Arbitration Act controls, by default. (*Cruise v. Kroger Co.* (2015) 233 Cal.App.4th 390, 399-400.)

The adhesive, take-it-or-leave-it nature of the Agreement, imposed by an employer with superior bargaining power, "is sufficient to establish some degree of procedural unconscionability. Yet 'a finding of procedural unconscionability does not mean that a contract will not be enforced, but rather that courts will scrutinize the substantive terms of the contract to ensure they are not manifestly unfair or one-sided.'" (*Sanchez*, *supra*, 61 Cal.4th at p. 915; *Gentry v. Superior Court* (2007) 42 Cal.4th 443, 469.)

b. *Substantive Unconscionability*

An arbitration agreement may be substantively unconscionable if "*overly* harsh" or "*unfairly* one-sided" or "*unduly* oppressive." (*Sanchez*, *supra*, 61 Cal.4th at pp. 910-911; *Armendariz*, *supra*, 24 Cal.4th at p. 114.) If the agreement is not bilateral, so that only the employee's claims are subject to arbitration (but not the employer's claims), it is unfairly one-sided. (*Armendariz*, at pp. 118-119.) Or, if the party imposing arbitration mandates a post-arbitration proceeding for its own benefit, at the expense of the party obliged to accept arbitration, the provision may be substantively unconscionable. (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071-1072.) A party cannot avoid a

6

contractual obligation because he thinks, in retrospect, that it is unfair; "[n]ot all one-sided contract provisions are unconscionable." (*Sanchez*, at p. 911.)

Here, arbitration is mutual: both Guerra and LBCC agreed to arbitrate "all employment and employment-related matters," stating that "*Both parties* to this contract, by entering into it, are giving up their constitutional rights to have any such dispute decide[d] in a court of law before a jury, and instead are accepting the use of mediation and arbitration." (Italics added.) This is not a contract that allows the employer to sue for damages or injunctive relief, while employees are restricted to arbitration. (See *Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, 86-87; *Armendariz*, *supra*, 24 Cal.4th at pp. 115-120.) The parties' agreement is not unilateral or unfairly one-sided.

The trial court found the Agreement substantively unfair because it requires "the claimant" (meaning either LBCC or Guerra) to pursue arbitration claims "with reasonable diligence." State law gives the arbitrator the power to dismiss a dispute for failure to proceed with reasonable diligence. (*Burgess v. Kaiser Foundation Hospitals* (1993) 16 Cal.App.4th 1077, 1081.) An arbitration claimant "bears the primary responsibility of exercising diligence in order to advance progress towards the resolution of its claim." (*Engalla v. Permanente Medical Group, Inc.*, *supra*, 15 Cal.4th at p. 980.) That the Agreement spells out settled state law does not make it unconscionable.

Guerra asserts that the Agreement lacks mutuality because it gives LBCC "the right to unilaterally modify" its terms. The Agreement contains an integration clause stating that it is the parties' "entire agreement and understanding" and any changes "must be in writing and signed by the Facility President." This is not a unilateral modification clause: it means that if the parties want to change the Agreement, the only LBCC employee with authority to consent to changes is its chief executive.

The Agreement provides that "[e]ach party shall pay for its own costs and attorneys fees, unless an arbitrator rules that applicable law requires otherwise." There is no reason to believe that the arbitrator(s) would not apply the attorney fee provisions

7

contained in the Labor Code, as required by the Agreement. This is consistent with state law. (*Armendariz*, *supra*, 24 Cal.4th at pp. 110-111.)

The trial court took issue with the selection of the arbitrator(s). If mediation fails, "each party shall select a party arbitrator and a third neutral arbitrator shall be selected by the arbitrators appointed by the parties." Or, the parties may, by mutual written agreement, choose to select a single neutral arbitrator. Guerra is entitled to participate fully in the selection process, either by naming his own party arbitrator, or by agreeing in writing to a neutral third party arbitrator. Guerra is not required to accept a sole arbitrator, picked by LBCC, who is so closely identified with one of the parties as to be in fact, if not in name, a party to the contract. (*Graham v. Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 824-825.)

Payment of arbitrator's fees was another reason cited by the trial court for invalidating the Agreement. The Agreement states that the single arbitrator's fees "will be split equally between the employee and [LBCC] except hourly employees will not be required to pay more than $500.00." This provision is fair because $500 is not "beyond any expense that an employee would be required to bear if the action was brought in court." (*McManus v. CIBC World Markets Corp.*, *supra*, 109 Cal.App.4th at p. 93.) The cost is essentially the same as filing a court case.

The Agreement requires that when multiple arbitrators are used, "Each party will pay the fees and costs associated with their own party arbitrator." This is the one element of the Agreement that runs afoul of the law. "[W]hen an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court" to ensure that the employee will not be deterred by greater costs than the cost of litigation. (*Armendariz*, *supra*, 24 Cal.4th at pp. 110-111.) While Guerra would have to pay $435 to institute litigation in the Los Angeles Superior Court, he would not be required to pay for the daily expense of having a judge.

8

The Agreement meets the requirements for a mandatory employment arbitration agreement, save for one: (1) it provides for arbitrators named by each party, or a mutually agreeable neutral arbitrator; (2) it provides for discovery pursuant to the Code of Civil Procedure; (3) it requires a written award; and (4) it allows the same types of relief that would be available in court. The only requirement that is not met is that employees must pay arbitrator fees. (*Armendariz*, *supra*, 24 Cal.4th at p. 102.)

**3. Severability**

As discussed, the Agreement is adhesive because it was imposed as a condition of employment; however, it is mutual, is not unduly oppressive, nor unfairly one-sided, nor overly harsh. As a matter of law, we cannot say that the Agreement is """"unreasonably favorable to the more powerful party.""""" (*Sanchez*, *supra*, 61 Cal.4th at p. 911.) The only improper provision in the two-page Agreement is a single sentence relating to the payment of fees associated with party arbitrators.

If a contract clause is unconscionable, "the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." (Civ. Code, § 1670.5, subd. (a).) The question is whether the contract as a whole is "permeated" by unconscionability. (*Armendariz*, *supra*, 24 Cal.4th at p. 122.) If the purpose of the contract is "tainted with illegality" such that it cannot be enforced, then an illegal provision within it should not be severed; but if the illegality "is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." (*Id.* at p. 124.)

The Agreement in this case is not permeated by unconscionability, nor is the purpose of contract tainted with illegality. "Accordingly, the unconscionable provision requiring payment of the fees can be severed" from the Agreement. (*McManus v. CIBC World Markets Corp.*, *supra*, 109 Cal.App.4th at p. 102.) LBCC concedes that it is responsible for the cost of the arbitration. We direct the removal of the sentence "Each party will pay the fees and costs associated with their own party arbitrator" from the

9

Agreement, and instead impose the costs of the arbitration on LBCC. (*Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1477-1478.)

## 4. Class Claims

The Agreement does not contain an express waiver of class claims. By the same token, it does not expressly authorize class claims. It is silent on the issue. The parties submitted no extrinsic evidence that they intended to arbitrate on a classwide basis. Both sides agree that terms were never discussed when the Agreement was signed.[1]

Arbitration is a matter of contract and, as such, "it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." (*First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 943; *Garden Fresh Restaurant Corp. v. Superior Court* (2014) 231 Cal.App.4th 678, 684.) It cannot be presumed that the parties consented to classwide arbitration when the arbitration agreement is silent on class actions. (*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.* (2010) 559 U.S. 662, 685; *Garden Fresh*, at p. 686.) The benefits of arbitration—lower cost, efficiency, and speed—are reduced in class actions; moreover, due process concerns arise because an award would "adjudicate the rights of absent parties and bind them, not just the parties to the arbitration agreement," and the decision is unreviewable. (*Garden Fresh*, at pp. 686-687; *Stolt-Neilsen*, *supra*, 559 U.S. at pp. 685-686.) In short, "[a]rbitration is poorly suited" to class actions, which interfere with the fundamental attributes of bilateral arbitration. (*AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333 [131 S.Ct. 1740, 1752]; *Garden Fresh*, at p. 689.)

Absent evidence of any discussion between the parties about class actions, we deduce their intent from the language in the Agreement. (*Nelsen v. Legacy Partners Residential, Inc.* (2012) 207 Cal.App.4th 1115, 1129.) It reads, "the 'Facility' and I agree

---

[1] The trial court did not reach the issue of whether class arbitration is permissible, after finding the Agreement unconscionable. There is no dispute that the parties did not discuss class issues at the time of contracting. As a result, the issue is decided as a matter of law from the language of the Agreement.

to mediate and arbitrate any disputes." By its ordinary meaning, language limiting the arbitration agreement to the employer and the employee unambiguously negates any intention to include other employees in the arbitration and contemplates two-party—not class—arbitration. (*Id.* at pp. 1130-1131; *Kinecta Alternative Financial Solutions, Inc. v. Superior Court* (2012) 205 Cal.App.4th 506, 517-519.)

Language in the Agreement that the parties intend to "bind all other parties whose claims may arise out of or relate to the claims covered by this Agreement" must be read in conjunction with the preceding sentence, relating to LBCC's affiliates, subsidiaries, partners, officers, directors, employees or agents. It cannot mean that employees who are not parties to the Agreement (and who perhaps never signed an arbitration agreement) are bound by the arbitration decision. It would be a patent due process violation to sweep the claims of nonparty employees into Guerra's dispute, without giving them any right to select their own attorneys and arbitrators, or the opportunity to opt out of the arbitration. The same analysis applies to contract language stating that the parties consent to the joinder of persons who "would otherwise be a proper additional party." Provisions in the Agreement requiring that a claimant arbitrate in a single proceeding all claims arising from "the same incident" does not give Guerra the right to arbitrate on behalf of other employees, only his own wage and hour claims.

## DISPOSITION

The order denying the petition to compel arbitration is reversed. The trial court is to enter a new order dismissing the class claims and granting the motion to compel arbitration of Guerra's individual claims, with the proviso that the one sentence relating to arbitrator fees and costs be removed, as described in this opinion. Long Beach Care Center, Inc., is entitled to recover its costs on appeal from Paolo Guerra.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:

CHAVEZ, J.　　　　　HOFFSTADT, J.

11