Filed 11/12/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| GARY GEORGE et al., <br> Plaintiffs and Appellants, <br> v. <br> eBAY, INC., <br> Defendant and Respondent. | A162129 <br><br> (Alameda County <br> Super. Ct. No. RG <br> 15780778) |

Appellants Gary George and Nicole Pitteloud were two of a group of plaintiffs who sued eBay, Inc. and PayPal, Inc., challenging various provisions in their respective user agreements. Plaintiffs' operative second amended complaint alleged 23 causes of action, 13 against eBay alone, seven against PayPal alone, and three against both defendants. Both defendants demurred to the second amended complaint, and the trial court sustained the demurrers without leave to amend as to 20 of the causes of action, including to 14 of the 16 causes of action alleged against eBay. The court thus allowed three causes of action to proceed, two of which were against eBay—the first, for breach of contract (against both defendants), and the 17th for violation of the covenant of good faith and fair dealing.

Some three and one-half years later, appellants opted out of the case that was proceeding against eBay, and voluntarily dismissed the two causes of action against it. Judgment of dismissal was entered against them, from which appellants appeal, contending the trial court got it wrong as to 11 of

1

the causes of action as to which the trial court sustained the demurrer without leave to amend. We reject the contention, concluding the trial court properly sustained the demurrer and did not abuse its discretion in doing so without leave to amend. We thus affirm the judgment.

## BACKGROUND

### The General Overview

This is the third appeal to come before us in this case, a case that began in August 2015, when a group of plaintiffs—current (or former) sellers on eBay who had listings on eBay's website—filed their original complaint. It named as defendants eBay, a global e-commerce platform alleged by plaintiffs to have well over 100,000,000 active users, and PayPal, the entity that provided online payment services for individuals and businesses. In November 2015, the case was removed to the Federal District Court, and four months later remanded to superior court.

In October 2016, plaintiffs filed a first amended complaint (FAC), a putative class action against eBay and PayPal seeking "damages, restitution, injunctive and declaratory relief, and accounting." Both defendants filed demurrers, and on April 13, 2017, the Honorable George Hernandez, a most experienced superior court judge, issued a comprehensive, four-page single-spaced, tentative ruling that, analyzing the FAC cause of action by cause of action, sustained the demurrer in its entirety, but granted leave to amend. And in the course of his ruling, Judge Hernandez expressed his overarching concern that plaintiffs had merely stated "general policy grievances" and that "[w]ithout additional factual detail, the complaint amounts to a general attack on unfavorable contract provisions and/or policies and fails to state a claim by any individual plaintiff."

2

Plaintiffs did not contest the tentative ruling, and it became the order of the court.

**The Second Amended Complaint**

In May 2017, 10 plaintiffs, including appellants, filed a second amended complaint (SAC). As noted, the SAC alleged 23 causes of action, 16 of which were against eBay: 13 against eBay alone and three against both defendants. The SAC is a massive document, over 250 pages long with its attachments. The SAC has 79 pages of allegations containing 258 paragraphs, and has attached to it 32 exhibits, including the user agreements of the two defendants and 26 separate eBay policies incorporated into its user agreement.

eBay and PayPal demurred again. Again Judge Hernandez issued a comprehensive tentative ruling. This time plaintiffs contested and, following argument, Judge Hernandez issued separate orders on the demurrers, sustaining them without leave to amend as to 20 of the 23 causes of action alleged. As specifically applicable here, the claims against eBay, Judge Hernandez sustained the demurrer without leave to amend as to 14 of the 16 claims, leaving extant only two—the first, for breach of contract (alleged against both defendants) and the 17th, for violation of the covenant of good faith and fair dealing.

Plaintiffs petitioned for a writ of mandate, which we summarily denied.

In short, as to eBay two claims remained, two claims that continue to this day.[1]

---

[1] We were recently advised that a trial date had been set for July 2021, which was continued to some date in the future.

3

**The First Appeal: The Case Against PayPal**

As noted, PayPal also filed a demurrer. As also noted, as to the claims alleged against PayPal, Judge Hernandez sustained the demurrer as to most of those causes of action without leave to amend, leaving only two—the first, for breach of contract (against both defendants) and the 23rd, for an accounting.

In July 2019, plaintiffs moved to dismiss the first and 23rd causes of action against PayPal. The trial court granted the motion, and pursuant to a stipulated request entered judgment for PayPal. Plaintiffs appealed, and on March 2, 2021, we filed our published opinion affirming the judgment: *Chen v. PayPal, Inc.* (2021) 61 Cal.App.5th 559 (*PayPal*). So, PayPal is no longer a party in the case.

**The Second Appeal: Denial of Class Certification**

In May 2019, plaintiffs filed a motion for class certification, seeking certification of classes for the first and 17th causes of action. The trial court denied certification for both classes. Plaintiffs appealed, and on August 24, 2021, we filed our unpublished opinion affirming the trial court: *Chen v. eBay* (Aug. 24, 2021, A158417 [nonpub. opn.]).[2]

In short, the case continues against eBay, as individual claims by individual plaintiffs on two causes of action. But not appellants.

In early 2021, appellants dismissed with prejudice the first and 17th causes of action, thus abandoning the two claims that had been proceeding on their behalf. Judgment of dismissal was entered, from which appellants filed this appeal.

---

[2] On our own motion, we take judicial notice of both opinions. (Evid. Code, §§ 452, 459.)

## DISCUSSION

### The Standard of Review

The standard of review governing an appeal from a demurrer sustained without leave to amend is well established, summarized, for example, by us in *Chiatello v. City and County of San Francisco* (2010) 189 Cal.App.4th 472, 480 (*Chiatello*): " 'Because this case comes to us on a demurrer for failure to state a cause of action, we accept as true the well-pleaded allegations in plaintiffs' [second] amended complaint. " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.]" ' [Citation.] We likewise accept facts that are reasonably implied or may be inferred from the complaint's express allegations. [Citations.] ' " 'A demurrer tests the legal sufficiency of the complaint . . . .' [Citations.] On appeal from a dismissal after an order sustaining a demurrer, we review the order de novo, exercising our independent judgment about whether the complaint states a cause of action as a matter of law. [Citations.] When the trial court sustains a demurrer without leave to amend, we must also consider whether the complaint might state a cause of action if a defect could reasonably be cured by amendment. If the defect can be cured, then the judgment of dismissal must be reversed to allow the plaintiff an opportunity to do so. The plaintiff bears the burden of demonstrating a reasonable possibility to cure any defect by amendment." ' " (Accord, *O'Grady v. Merchant Exchange Productions, Inc.* (2019) 41 Cal.App.5th 771, 776–777.)

We also assume the attachments to the complaint are true, and they take precedence over any conflicting allegations in the SAC. (*Brakke v. Economic Concepts, Inc.* (2013) 213 Cal.App.4th 761, 767–768.)

Finally, we "will affirm if there is any ground on which the demurrer can properly be sustained, whether or not the trial court relied on proper grounds or the defendant asserted a proper ground in the trial court proceedings." (*Martin v. Bridgeport Community Assn., Inc.* (2009) 173 Cal.App.4th 1024, 1031; see *Chiatello*, *supra*, 189 Cal.App.4th at p. 480.)

**Summary of Appellants' Appeal**

As indicated above, appellants appeal the ruling on 11 causes of action, the second, seventh, eighth, ninth, 12th,13th, 14th, 15th, 16th, 19th, and 20th. Fundamental to appellants' argument on four of the causes of action— the second, ninth, 15th, and 20th—is the contention that the provisions attacked in these causes of action are unconscionable. Appellants' brief lumps these four causes of action together in its discussion, and so will we.

In addition, the 12th, 13th, and 14th causes of action are all based on the fundamental premise that eBay hides listings, "secretly," "completely," and on a "regularly recurring basis." And as appellants' brief acknowledges, these three causes of action are related, their brief describing the 13th cause of action as "similar" to the 12th, and the 12th and 13th as "highly relevant" to the 14th. We will also address these three causes of action together.

Against that background, we analyze the SAC, and conclude that the demurrer was properly sustained as to all of the challenged causes of action, as they all fail to state a claim.

**None of the Eleven Causes of Action States a Claim**

6

***The Second, Ninth, 15th, and 20th Causes of Action***

As noted, the second, ninth, 15th, and 20th causes of action are all premised on the contention that the eBay user agreement was unconscionable, a principle to which appellants devote over 13 pages of their brief. We thus begin with the law of unconscionability.

*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899 (*Sanchez*), involved a sales agreement to purchase a car. Concluding that the Court of Appeal erred as a matter of law in finding the agreement unconscionable, our Supreme Court held for defendant, a holding that began with an extensive discussion of the general principles of unconscionability. Here is that discussion:

" ' "One common formulation of unconscionability is that it refers to ' "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." ' [Citation.] As that formulation implicitly recognizes, the doctrine of unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." ' ([*Sonic-Calabasas A, Inc. v. Moreno* (2013)] 57 Cal.4th [1109,] 1133 [(*Sonic II*)].)

" ' "The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." [Citation.] But they need not be present in the same degree. "Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves." [Citations.] In other words, the more

7

substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' (*Armendariz v. Foundation Health Psychare Services, Inc.* (2000) 24 Cal.4th 83, 114 (*Armendariz*).)

"As we stated in *Sonic II*: 'The unconscionability doctrine ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as " ' "overly harsh" ' " [citation], " 'unduly oppressive' " (*Perdue v. Crocker National Bank* (1985) 38 Cal.3d 913, 925 (*Perdue*)), " 'so one-sided as to "shock the conscience" ' " (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 246 (*Pinnacle*)), or "unfairly one-sided" (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071). All of these formulations point to the central idea that unconscionability doctrine is concerned not with "a simple old-fashioned bad bargain" [citation], but with terms that are "unreasonably favorable to the more powerful party." (8 Williston on Contracts (4th ed. 2010) § 18.10, p. 91). These include "terms that impair the integrity of the bargaining process or otherwise contravene the public interest or public policy; terms (usually of an adhesion or boilerplate nature) that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law, fine-print terms, or provisions that seek to negate the reasonable expectations of the nondrafting party, or unreasonably and unexpectedly harsh terms having to do with price or other central aspects of the transaction." (*Ibid*.)' (*Sonic II*, *supra*, 57 Cal.4th at p. 1145.) . . .

" '[C]ourts, including ours, have used various nonexclusive formulations to capture the notion that unconscionability requires a substantial degree of unfairness *beyond "a simple old-fashioned bad bargain."* ' ([*Sonic II*, *supra*, 57 Cal.4th] at p. 1160, italics added.) This latter qualification is important.

8

Commerce depends on the enforceability, in most instances, of a duly executed written contract. A party cannot avoid a contractual obligation merely by complaining that the deal, in retrospect, was unfair or a bad bargain. Not all one-sided contract provisions are unconscionable; hence the various intensifiers in our formulations: '*overly* harsh,' '*unduly* oppressive,' '*unreasonably* favorable.' (See *Pinnacle*, *supra*, 55 Cal.4th at p. 246 ['A contract term is not substantively unconscionable when it merely gives one side a greater benefit . . .'].) We clarify today that these formulations, used throughout our case law, all mean the same thing.

"An evaluation of unconscionability is highly dependent on context. (See *Williams v. Walker-Thomas Furniture Co.* (D.C. Cir. 1965) 350 F.2d 445, 450 ['The test is not simple, nor can it be mechanically applied'].) The doctrine often requires inquiry into the 'commercial setting, purpose, and effect' of the contract or contract provision. (Civ. Code, § 1670.5, subd. (b); accord, *Sonic II, supra*, 57 Cal.4th at pp. 1147–1148; *Walker-Thomas Furniture*, at p. 450 [unconscionability must 'be considered "in the light of the general commercial background and the commercial needs of the particular trade or case" '].) As we have recognized, ' "a contract can provide a 'margin of safety' that provides the party with superior bargaining strength a type of extra protection for which it has a legitimate commercial need without being unconscionable." ' (*Armendariz*, *supra*, 24 Cal.4th at p. 117; see *Walker-Thomas Furniture*, at p. 450 ['where no meaningful choice was exercised upon entering the contract,' the test is 'whether the terms are "so extreme as to appear unconscionable according to the mores and business practices of the time and place" '].) And, as noted, the substantive unfairness of the terms must be considered in light of any procedural unconscionability. The ultimate issue in every case is whether the terms of the contract are

9

sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement." (*Sanchez*, *supra*, 61 Cal.4th at pp. 910–912.)

Applying those principles here leads to the conclusion that the SAC has not alleged unconscionability—neither procedural nor substantive.

As to procedural unconscionability, appellants assert they alleged it in paragraphs 66 and 93. The former essentially alleges that the eBay user agreement was a standardized contract offered on a take-it-or-leave-it basis. The latter alleges as follows: "The eBay user agreement is a contract of adhesion as alleged in [paragraph] 66 of this [SAC]. In addition to the oppression that arose from the inequality of the bargaining power between . . . eBay on the one hand and the plaintiffs and members of the plaintiff class on the other that resulted in no real negotiation leading to a contract of adhesion, 'surprise' is also involved here. While it would not have been too difficult for the plaintiffs and members of the plaintiff class to view the eBay user agreement on the eBay website, the same was not true with respect to all of the eBay policies which eBay incorporated into its user agreement. It took more than two hours for counsel for plaintiffs to locate all of the eBay policies attached hereto as Exhibits C through FF." "It would have been extremely difficult for any plaintiff to have read through 145 pages . . . in such a short period of time."

But, we ask, what is the significance of a "short period of time?" Appellants, like all other plaintiffs, were sellers on eBay since at least 2008, perhaps 2006, and they remained there for all the years before the complaint was filed in 2015, including when the user agreement was modified in 2010. Beyond that, what is the claimed rush for a merchant to find a place to sell his or her wares? Appellants are hardly like the plaintiffs in two of the cases they primarily rely on, the prospective employees in *OTO, LLC v. Kho* (2019)

10

8 Cal.5th 111 (*Kho*) or the patient seeking a medical procedure in *Swain v. LaserAway Medical Group, Inc.* (2020) 57 Cal.App.5th 59 (*Swain*).

While the complaint conclusorily asserts that the user agreement is a contract of adhesion, it has not alleged facts demonstrating that it is unconscionable, as it does not allege that sellers on eBay had no alternatives. *Shadoan v. World Savings & Loan Assn.* (1990) 219 Cal.App.3d 97, a case cited by appellants, is illustrative. There, in a case involving a loan agreement, the trial court sustained the demurrer without leave to amend. Our colleagues in Division One affirmed, holding that plaintiffs "alleged no facts indicating that they were unable to receive more favorable terms from another lender . . . ." (*Id.* at p. 103.) Merely alleging that a contract is one of adhesion was insufficient in these circumstances to show procedural unconscionability.

Along these same lines is *Morris v. Redwood Empire Bancorp* (2005) 128 Cal.App.4th 1305, where the court said that "[o]ppression refers not only to an absence of power to negotiate the terms of a contract, but also to the absence of reasonable market alternatives." (*Id.* a p. 1320.) And it went on: " '[t]he oppression component [of procedural unconscionability] arises from . . . a [lack of] meaningful choice on the part of the weaker party' [citation.]" (*Id.* at p. 1319.) Likewise, *Aron v. U-Haul Co. of Cal.* (2006) 143 Cal.App.4th 796, 809, where, holding that plaintiff's claim of unconscionability failed on several grounds, the court said "there can be no 'oppression' when the customer has meaningful choices. [Citation.]" And *Graham v. Bank of Am., N.A.* (2014) 226 Cal.App.4th 594, 617, where a demurrer to a claim of unconscionability was affirmed where plaintiff failed to allege "he did not have the option to seek another lender or to simply choose not to enter the marketplace at the time." Appellants'

unconscionability claim fails under this rule because appellants do not allege they were unable to avoid eBay's allegedly unconscionable policies by, for example, selling on other online marketplaces.

In sum, the circumstances alleged here do not support oppression—and certainly not surprise.

The final value fees challenged by the second cause of action are clearly outlined in eBay's five-page "Money Back Guarantee," attached as Exhibit S to the SAC. And far from being hidden, the Money Back Guarantee is expressly described in a standalone section of the user agreement, which includes a direct link to the full eBay policy. Similarly, the policies attacked in the ninth, 15th, and 20th causes of action, the policies of including shipping charges in final value fees (ninth cause of action), removing duplicate listings (15th cause of action), and showing advertisements on pages with a listing (20th cause of action). The final value policy and the advertising policy are both in the four-page Exhibit O to the SAC, the eBay fee schedule, which exhibit is directly linked to the eBay user agreement. And the duplicate listings policy is easily accessible from the user agreement. Beyond all that, we note appellants' acknowledgment that it was within the reasonable expectation that eBay would amend the fee schedule to increase or decrease final value fees.[3]

The three cases primarily relied on by appellants—the aforementioned *Kho* and *Swain* and *Sonic II*—are not to the contrary. *Kho* and *Sonic II* involved employment-related agreements where the arbitration provisions

---

[3] This, of course, is consistent with the user agreement, which provides that eBay "may amend the agreement at any time by posting the amended terms on [www.eBay.com]" with notice provided at least 30 days before the new policy will take effect. The user agreement further provides that eBay "will notify [users] through the eBay Message Center" of the amended terms.

12

limited the forum in which the employees could challenge the employers' policy. And the cases found the agreements unconscionable because they required waiver of an employee's right to an affordable and accessible dispute resolution forum in pursuing wage claims. eBay's policies challenged in these causes of action do not require waiver of any forum for the redress of disputes.

*Swain* involved a plaintiff about to undergo a medical procedure, not a merchant looking for a place to sell his or her goods. (*Swain*, *supra*, 57 Cal.App.5th at pp. 63–64.) Moreover, *Swain* cited to three factors that weighed towards procedural unconscionability that simply do not exist here: (1) the agreement was provided "immediately" before plaintiff's procedure, demonstrating that plaintiff had "little time to review"; (2) defendant "exerted pressure" on plaintiff to sign; and (3) plaintiff did not have the opportunity to have an attorney assist her when she signed the agreement. (*Id.* at p. 69.) The facts here are a far cry, where eBay's policies were available online and accessible via a direct link from the user agreement for appellants to review and accept or reject before using eBay's marketplace, with appellants under no duress to agree to eBay's user agreement in order to voluntarily use eBay's services.

But even if appellants could be said to have alleged procedural unconscionability, it is minimal at best. They would thus have to allege a high degree of substantive unconscionability under the sliding scale described in the cases. (See *Sanchez*, *supra*, 61 Cal.4th at p. 910.) This, they have not done.

Judge Hernandez held that the SAC "does not contain allegations that show that the contract terms at issue in these [causes of action] 'are sufficiently unfair, in view of all relevant circumstances, that a court should

13

withhold enforcement.' " (*Sanchez, supra.* 61 Cal.4th at p. 912.)  As to this, appellants concede that Judge Hernandez properly "considered the allegations of unconscionable contract terms in all of the appellants' claims of unconscionability together . . . ."  Nevertheless, they argue, his statements regarding the unfairness of the contract terms in question "appears to be nothing more than a decision based upon 'gut reaction' "  We read the record otherwise and agree with Judge Hernandez:  the causes of action fail as a matter of law because appellants did not—and cannot—allege substantive unconscionability.

As noted above in the passage from *Sanchez*—indeed, as we ourselves have expressly held in *PayPal, supra*, 61 Cal.App.5th at p. 578—California courts do not invalidate contract terms even if they are allegedly an "unfair or a bad bargain"; substantive unconscionability requires that a term be "unduly oppressive" or "so one-sided as to shock the conscience."  As *Pinnacle, supra*, 55 Cal.4th at p. 246, put it, "A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be 'so one-sided as to "shock the conscience." ' "

Appellants quibble over the correct standard for substantive unconscionability, but the one Supreme Court case they rely upon, *Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, makes clear that the standard for substantive unconscionability is exceedingly high, and requires, for example, contract terms that " ' "impair the integrity of the bargaining process or otherwise contravene the public interest or public policy," ' " or " ' "that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law . . . ." ' "  (*Id.* at pp. 1244–1245.)  Appellants fail to show that the eBay terms challenged in the SAC meet this high bar—

14

which is not surprising, given the legitimate business purposes served by the eBay policies at issue.

For example, the policy that appellants seek to invalidate in the second cause of action—charging sellers final value fees for transactions that may be refunded as a result of buyers initiating the dispute resolution process— legitimately incentivizes sellers to resolve disputes informally with buyers, and thus benefits all users. Similarly, there is nothing unconscionable in the 2010 revision to the user agreement (attacked in the eighth and ninth causes of action) to include shipping charges in the final value fees in order to prevent sellers from charging an artificially low sales price and then inflating shipping fees in order to avoid paying fees to eBay.[4]

The same is true for the 15th cause of action, involving eBay's policy of deleting duplicate listings of the same item and charging sellers an insertion fee for placing the duplicate listing, and the 20th cause of action, involving the placement of competitor advertisements on listings. As we held in *PayPal*, unconscionability "requires inquiry into the 'commercial setting, purpose, and effect' of the contract or contract provision. [Citation.]" (*PayPal*, *supra*, 61 Cal.App.5th at p. 579.) The policies challenged in the 15th and 20th causes of action support eBay's legitimate business purpose in preventing sellers from placing redundant listings of the same item that

---

[4] Of interest on this issue is the actual result of the inclusion of shipping charges in final value fees on the overall fees that sellers pay, a result that does not come close to meeting the high standard for substantive unconscionability. For example, if a product sells for $50.00 and costs $10.00 to ship, including the shipping cost in calculating the final value fee changes the total fee from $5.00 to $6.00. This is hardly the sort of contractual term that shocks the conscience. (See e.g., *Morris*, *supra*, 128 Cal.App.4th at p. 1324 ["a one-time fee of $150 in exchange for affording a merchant the ability to accept customers' credit cards" does not "shock the conscience"].)

would degrade the overall marketplace for all users, and, further, its ability to decide the placement of advertisements, which is expressly permitted by the eBay user agreement.

There is simply nothing in the user agreement meeting the "shock the conscience" standard. As we have held in the materially identical context of the PayPal user agreement, the very high-bar to show unconscionability is not met by plaintiffs who in retrospect do not like a "bad bargain" or a perceived one-sided contract provision. (*PayPal*, *supra*, 61 Cal.App.5th at p. 579 ["Not all one-sided contract provisions are unconscionable; hence the various intensifiers in our formulation: '*overly* harsh,' '*unduly* oppressive,' '*unreasonably* favorable' . . . . An evaluation of unconscionability is highly dependent on context"].)

### *The Seventh Cause of Action*

The seventh cause of action is styled "Interference with Contractual Relations." "The elements which a plaintiff must plead to state a cause of action . . . are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." (*Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126 (*Pacific Gas & Electric*); see CACI No. 2201, [providing that plaintiff must prove that defendant "intended to disrupt the performance of [a] contract/ [or] knew that disruption of performance was certain or substantially certain to occur"].)

Appellants describe for over two pages what they claim to have alleged in the SAC as to this cause of action, citing to paragraphs 128, 131, 76, and finally 133, concluding that last reference with this description: "It is further

16

alleged in [paragraph] 133 of the SAC . . . that the defendant, by deciding almost every case in favor of fraudulent buyers who did not deserve to win, intended to disrupt the performance of the contract between buyer and seller, and in fact in almost every case, the sales agreements between plaintiffs and buyers were rescinded and/or canceled by defendant eBay when said fraudulent buyers were not entitled to have their contracts rescinded and/or cancelled."

There follows appellants' reference to *Pacific Gas & Electric*, *supra*, 50 Cal.3d 1118, from which they quote three sentences, and they then end with this: "In [paragraph] 134 of the SAC it is alleged that as a result of eBay's wrongfully forcing the recission and/or cancellation of contracts between each of the plaintiffs and each member of the plaintiff class and their respective buyers, the plaintiffs and members of the plaintiff class lost the sales and profits they would have made as a result of those sales."

Such does not measure up.

Appellants make no effort to explain why the bare assertions of intent at paragraph 133 meets the requirements of the tort. Nor do they claim that some other allegations in the SAC beyond paragraph 133 provide the factual support needed to state a claim. Indeed, the facts alleged elsewhere in the SAC actually undermine any conclusion that eBay acted with wrongful intent in implementing its dispute resolution process. As alleged in paragraph 75, eBay's dispute resolution process is designed to "provide[] protection for both buyers and sellers" and ensure that users have a positive experience in a "safe, fair, and enjoyable marketplace . . . ."

*Marin v. Jacuzzi* (1964) 224 Cal.App.2d 549, a decision by this court, is instructive. There, in a case alleging interference with contractual relations, the trial court sustained a demurrer without leave to amend. We affirmed,

17

holding that "[t]he use of the words wrongfully, willfully, and maliciously adds nothing to the pleadings except to convey a sense of outrage on the part of the appellant [citation.]" (*Id*. at p. 552.)

### *The Eighth Cause of Action*

The eighth cause of action is styled "Breach of Implied Covenant of Good Faith and Fair Dealing." It is based on the claim that eBay amended the user agreement to include shipping charges in the calculation of final value fees charged to sellers—a policy, not incidentally, expressly set forth in the eBay fees schedule.[5] Thus, because appellants expressly agreed to the challenged fees, they resort in the eighth cause of action to the theory that eBay breached an implied duty in implementing the policy. To no avail.

As our Supreme Court put it in *Carma Developers (Cal.), Inc. v. Marathon Development Cal., Inc.* (1992) 2 Cal.4th 342, 373–374: "We are aware of no reported case in which a court has held the covenant of good faith may be read to prohibit a party from doing that which is expressly permitted by an agreement." (See also *Peleg v. Neiman Marcus Group, Inc.* (2012) 204 Cal.App.4th 1425, 1464 [even though a party's "unilateral right" to modify an agreement is subject to the general duty of good faith and fair dealing, the implied duty "may not give rise to duties or obligations that conflict with the agreement's express terms"].)

Here, eBay's user agreement expressly provides that its "fees schedule" can be modified "from time to time" "with at least 14 days' notice by posting the changes on the eBay site."[6] As other courts have found, this provision

_____

[5] This claim is also the essence of the ninth cause of action, which is addressed above in the discussion of unconscionability.

[6] The provision reads as follows: "When you list an item or use a service that has a fee, you have an opportunity to review and accept the fees that you will be charged based on our fees schedule, which we may change

18

bars any claim that eBay owes an implied duty not to modify its fees. (See e.g., *Missing Link, Inc. v. eBay, Inc.* (N.D.Cal. Aug. 12, 2008, No. C-07-04487 RMW) 2008 WL 3496865, at p. *5, where, dismissing the claim that eBay's amendment of its fee schedule violated an implied duty, the district judge held that: "[I]n light of the language of eBay's user agreement expressly permitting eBay to increase its fees, the increase in fees for GUC ['Good 'Till Cancelled'] listings was 'within the reasonable expectation of the parties' and thus 'can never violate an implied covenant of good faith and fair dealing.' [Citation]"; *Campbell v. eBay, Inc.* (N.D.Cal. Aug. 11, 2014, No. 13-CV-2632 YGR) 2014 WL 3950671, at p. *4 [dismissing a virtually identical claim without leave to amend because "eBay's change in policy adding shipping costs to the calculation of final value fees" was based on "contract terms as to which plaintiff agreed"]; *MySpace, Inc. v. The Globe.com, Inc.* (C.D.Cal. Feb. 27, 2007, No. 06-cv-3391) 2007 WL 1686966, at p. *10 [finding that "because the [Terms of Service] contract specifically provides for modification of the agreement, the [updated] provision should apply . . ."].) As Judge Hernandez properly held, the shipping charges in the final value fees calculation "fall clearly within the provisions of the user agreement that permit such modifications."

Appellants try to avoid the above terms of the user agreement by arguing they do not apply to final value fees at all or, alternatively, are limited to changing the percentage that eBay charges but do not allow eBay to "include shipping charges" as one of the elements upon which the "final value fee are calculated . . . ." The contention is fatuous: as reflected in the

---

from time to time. Changes to that schedule are effective after we provide you with at least 14 days' notice by posting the changes on the eBay site."

19

attachments to the SAC, final value fees are one of the fees set forth in the "fees schedule" to which appellants agreed.

Finally, we note that where there is independent consideration—as there is here, because appellants were able to use the eBay platform for their transactions—the implied covenant cannot be used to vary the express terms of the contract. (See *Third Story Music, Inc. v. Waits* (1995) 41 Cal.App.4th 798, 808 [declining to invoke implied covenant, noting that "whether or not an implied covenant is read into the agreement, the agreement would be supported by consideration and would be binding"]; *Sweet v. Google, Inc.* (N.D.Cal. Mar. 7, 2018, No. 17-CV-03953-EMC) 2018 WL 1184777, at p. *9 [dismissing implied covenant claims with prejudice where, "[r]egardless of how YouTube exercised its discretionary power . . . the agreement . . . allowed Zombie to post videos on its forum free of charge in exchange for getting a license to its content"].)

### *The 12th, 13th, and 14th Causes of Action*

The 12th, 13th, and 14th causes of action are styled respectively "Breach of Contract for Hiding Plaintiffs' Listings,"[7] "Intentional Interference With Prospective Economic Advantage re Hiding of Listings," and "Deceptive Business Practices in Violation of Business and Professions Code section 17200." As indicated, all are based on the fundamental premise that eBay hides listings, "secretly," "completely," and on a "regularly recurring basis." As appellants' brief puts it at one point, eBay allegedly makes certain "listings completely invisible and not capable of being seen by prospective buyers."

---

[7] We cannot help but observe that the first cause of action, one of the causes of action allowed to proceed, alleges breach of contract. For reasons best known to themselves, appellants dismissed that cause of action.

Appellants' brief acknowledges that the three causes of action are related, their brief describing the 13th cause of action as "similar" to the 12th, and the 12th and 13th as "highly relevant" to the 14th. Appellants also acknowledge that eBay has the "contractual right to downgrade visibility." Against that background, we address all three causes of action together.

To begin with, at no place do appellants identify any listing on eBay that was made "completely invisible" or "completely hidden." Their brief does make the conclusory assertions that "all" of their listings were hidden "for a substantial period of time," and that they "had no chance of selling their items" through the eBay website. But while the SAC alleges "many" listings were hidden, it lacks any allegation regarding any specific listing that could not be found or when the hiding allegedly occurred. Instead, the SAC theorizes that because sales allegedly decreased, listings were hidden, ignoring the innumerable other reasons that would readily explain why their sales may have fluctuated. Such speculation cannot support a viable claim. (*Stevenson Real Estate Services, Inc. v. CB Richard Ellis Real Estate Services, Inc.* (2006) 138 Cal.App.4th 1215, 1219–1220.) Again, Judge Hernandez's holding is spot on: "the 'hidden listing' allegations remain deficient . . . [w]ithout more specific factual allegations eBay cannot possibly determine whether any listings were actually not displayed (i.e., were 'hidden') or if so, why."

Not only that, facts alleged elsewhere in the SAC undermine the existence of any such practice. For example, plaintiff Cobb alleges he was initially unable to find some of his listings but found them "several days later," again rebutting plaintiffs' claims of listings being "completely hidden." Were all that not enough, appellants' brief acknowledges that eBay has the "contractual right to downgrade visibility."

21

The 13th cause of action—for intentional interference with prospective economic advantage—fails for the additional reason that it lacks the necessary factual allegations of the requisite economic relationship that was disrupted.  Appellants do not dispute that they failed to allege a specific economic relationship that was disrupted, but assert that their reference to "repeat buyers" is enough, citing in claimed support *Westside Center Associates v. Safeway Stores 23, Inc.* (1996) 42 Cal.App.4th 507.  It is not supportive.  Affirming a judgment for defendant, the court noted that plaintiff claims that "Safeway interfered in its relationship with the class of all potential buyers for its property . . . not with a particular sale but with [plaintiff's] 'opportunity' to sell." (*Id.* at p. 523.)  And after an extensive analysis of the cases, the court concluded that the claim fails because "[w]ithout an existing relationship with an identifiable buyer, [plaintiff's] expectation of a future sale was 'at most a hope for an economic relationship and a desire for future benefit.' [Citation.]" (*Id.* at p. 527.)

Merely referring to unidentified "repeat buyers" is insufficient, when there are no facts to show that the unidentified buyers were likely to purchase the unidentified listings that were supposedly "hidden" by eBay.  Indeed, *Roy Allan Slurry Seal, Inc. v American Asphalt South, Inc.* (2017) 2 Cal.5th 505, another of the cases cited by appellants, holds just that:  a claim for tortious interference is properly dismissed where "either the economic relationship with a third party is too attenuated or the probability of economic benefit is too speculative." (*Id.* at p. 515; see *Damabeh v. 7-Eleven, Inc.* (N.D.Cal. May 8, 2013, No. 5:12-CV-1739) 2013 WL 1915867, at p. *10 ["[p]laintiff's claims fail because plaintiff has not identified the specific relationship with which defendant is alleged to have interfered"].)

### *The 16th Cause of Action*

The 16th cause of action is styled "for Declaratory Relief, Injunctive Relief, and Damages for Enforcing Contract Provisions Which Constitute Illegal Penalties and Forfeitures." It alleges that by applying restrictions on sellers who violate eBay's seller performance standards, eBay imposes "illegal penalties and forfeitures" and restrains appellants from practicing a profession under Business and Professions Code section 16600. Hardly.

We begin the analysis by noting that courts have found that eBay's user agreement and incorporated policies expressly allow eBay to police its website in this manner. Thus, for example, *Dunkel v. eBay, Inc.* (N.D. Cal. Mar. 19, 2014, No. 5:12-CV-01452-EJD) 2014 WL 1117886, at p. *5, where the court dismissed the claim—there, for a violation of the implied covenant—"because both the user agreement and the seller performance standards expressly grant defendant the right to suspend plaintiffs' accounts for their failure to meet the stated standards." As the district judge explained: " 'We are aware of no reported case in which a court has held the covenant of good faith may be read to prohibit a party from doing that which is expressly permitted by an agreement.' [Citation.]"

The challenged provisions do not impose a "forfeiture" or "penalty" because they do not require sellers to pay any money to eBay or to forfeit any property or independent rights. (See *Ridgley v. Topa Thrift & Loan Assn.* (1998) 17 Cal.4th 970, 977–978 [restriction on improper penalties applies to "provision[s] by which money or property would be forfeited without regard to the actual damage suffered"].) Nor do eBay's seller requirements restrain appellants from practicing a profession under Business and Professions Code section 16600. As Judge Hernandez aptly noted, appellants have not alleged facts "showing that the restrictions on seller activity on eBay create a

23

covenant not to compete or otherwise restrict [appellants'] ability to engage in a profession" or that appellants were "unable to sell their wares anywhere else."

In claimed support of their novel interpretation of Business and Professions Code section 16600, appellants cite *Golden v. California Emergency Physicians Medical Group* (9th Cir. 2015) 782 F.3d 1083, 1085. It is easily distinguishable. There, a hospitalist negotiated a settlement with his former employer, a hospital operator, which settlement included a provision barring the hospitalist from working at any hospitals owned, acquired, or contracted by the operator. (*Ibid.*) Noting the operator's "dominance of emergency medicine within the state," and its "aggressive" expansion, the court further noted the possibility that the settlement provision would interfere with the hospitalist's ability to gain employment in the future, and therefore *might* constitute a restraint on his profession. (*Id.* at pp. 1089, 1093.) Not only do appellants not allege anything remotely analogous, they could not, as the selling restrictions apply only to the eBay marketplace, and in no way prevent appellants from selling their goods elsewhere.

### *The 19th Cause of Action*

The 19th Cause of Action is styled "Aiding and Abetting Buyers in Defrauding Sellers." The essence of the claim is that eBay supposedly allows "a substantial number of unscrupulous buyers" to take advantage of appellants by eBay allegedly resolving disputes in favor of buyers. Specifically, paragraph 225 of the SAC alleges that when a buyer files a case against a seller for resolution by eBay, in almost every case the dispute is resolved in favor of the buyer and against sellers. The brief then goes on to refer to paragraphs 226, 227, 229, and 230 of the SAC, to allege in essence

that appellants have been victimized by such unscrupulous buyers; that eBay was fully aware of this; that eBay "substantially contributed to the creation of a cadre of fraudulent and unscrupulous buyers"; and that it provided substantial assistance and encouragement "to the unscrupulous buyers."

Citing CACI, *Nasrawi v. Buck Consultants LLC* (2014) 231 Cal.App.4th 328, 343 (*Naswari*) sets forth the four elements of a claim for aiding and abetting, there in a claim involving an alleged breach of fiduciary duty: "(1) a third party's breach of fiduciary duties owed to plaintiff; (2) defendant's actual knowledge of that breach of fiduciary duties; (3) substantial assistance or encouragement by defendant to the third party's breach; and (4) defendant's conduct was a substantial factor in causing harm to plaintiff. (Judicial Council of Cal., Civ. Jury Instns. (CACI) (2014) No. 3610 . . .)." Appellants' conclusory allegation that eBay was "aware" of "unscrupulous buyers who take unfair advantage of sellers" is manifestly insufficient. (*Casey v. U.S. Bank National Assn.* (2005) 127 Cal.App.4th 1138, 1154 [dismissing aiding and abetting claim where plaintiff alleged that defendant generally knew of "wrongful or illegal conduct" but did not plead knowledge of specific alleged fraud]; *Das v. Bank of America, N.A.* (2010) 186 Cal.App.4th 727, 745.)

Moreover, knowledge alone, even specific knowledge, is not enough to state a claim for aiding and abetting. California law "necessarily" requires that for aiding and abetting liability to attach, a defendant have made "a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act." (*American Master Lease LLC v. Idanta Partners, Ltd.* (2014) 225 Cal.App.4th 1451, 1476.) Or as the Court of Appeal put it in *Gerard v. Ross* (1988) 204 Cal.App.3d 968, 983, an

alleged aider and abettor must have "acted with the intent of facilitating the commission of that tort."  Such is lacking here.

Superimposed on the above is that nowhere do appellants allege with the requisite specificity that what the "unscrupulous buyers" allegedly did— i.e., the activity eBay allegedly "aided and abetted"—was tortious, let alone fraudulent.  (*Nasrawi*, *supra*, 231 Cal.App.4th at p. 343.)

**A Closing Observation**

Neither in the trial court nor here do appellants argue that in the event the demurrer were to be sustained, it be with leave to amend.  Despite that, eBay has an argument addressing the issue, contending that leave to amend was properly denied.  We agree with eBay, especially as appellants do not even argue the point.

But there is more, as manifest by appellants' own pleading.

Among the allegations in the SAC is that the eBay user agreement attached to the SAC was the agreement in effect at the time of the "complaint in *Campbell v. eBay, Inc. and PayPal, Inc.* [was filed] in the [Santa Clara County Superior Court] in October 2012.  [¶] . . .  The case of *Campbell v. eBay, Inc. and PayPal, Inc.* was a putative class action involving putative class members who were residents of the State of California and who were eBay and PayPal users.  The claims set forth in this First [*sic*] Amended Complaint are very similar to the claims set forth in the *Campbell* case."

eBay refers to this allegation in the "procedural background" of its respondent's brief, and makes the following representation:  "Appellants' counsel have been litigating against eBay in different federal and state courts for almost a decade.  They first filed suit in 2012 in *Campbell* . . . .  After nearly three years and six complaints later, appellants' counsel voluntarily dismissed the *Campbell* matter, after the district court expressed serious

26

'concerns' about the viability of the claims, issued two orders to show cause why the case should not be dismissed for failure to prosecute, and expressly cautioned appellants' counsel 'of their obligations [to investigate and ensure a good faith basis for their claims] under [Federal Rules of Civil Procedure, rule] 11.' "

Appellants' reply brief refers to this accusation, and responds that "eBay makes a point of announcing that the Federal Court, in the *Campbell* case, found the case to be unmeritorious. In *Campbell*, the court ruled on the motions of both defendant eBay and defendant PayPal to dismiss the plaintiff's third amended complaint. The court denied the motion of defendant eBay, Inc. to dismiss as it related to the second claim for breach of contract/breach of implied covenant, and the fifth claim for interference with contract. The court ordered a filing of a fourth amended complaint. The plaintiff voluntarily dismissed her complaint against defendant eBay, Inc. for the simple reason that she did not want to litigate her case in Federal Court. Only a very few of the claims alleged against defendant eBay, Inc. in the *Campbell* case were also alleged against eBay, Inc. in the case at bar."

As we quoted in our *PayPal* opinion, PayPal's respondent's brief in that appeal went further than referring to *Campbell*, saying this: "Appellants' counsel have been litigating iterations of their claims in different federal and state courts for over seven years. . . ." And, following reference to the first-filed 2012 *Campbell* case, PayPal's brief represented that after dismissing the claims against PayPal that led to [the] appeal against it, "appellants counsel filed many of the same claims . . . again, on behalf of new plaintiffs, in San Diego Superior Court. (*McGuiness et al. v. eBay, Inc., et al.,* Case No. 37-2018-00031242-CU-FR-CTL (San Diego Sup. Ct.).) These claims were compelled to arbitration. . . . Appellants' counsel then refiled the same

27

claims, on behalf of the same plaintiffs, in Alameda Superior Court. (*McGuiness et al. v. eBay, Inc. et al.,* Case No. RG19020806 (Alameda Sup. Ct.).)  Appellants' counsel then dismissed these claims as to PayPal, after PayPal filed a sanctions motion." (*PayPal*, *supra*, 61 Cal.App.5th at p. 566, fn. 3.)

While appellants' reply brief in the PayPal appeal took exception to PayPal's characterization of that history, at no point did it deny that the various cases referred to had in fact been filed.  In short, counsel for appellants has apparently been urging the same contentions for some nine years, all without success.  This is enough.

## DISPOSITION

The judgment is affirmed.  eBay shall recover its costs on appeal.

_____
Richman, Acting P.J.

We concur:


_____
Stewart, J.


_____
Miller, J.

*George v. eBay, Inc.* (A162129)

| | |
|---|---|
| Trial Court: | Alameda County Superior Court |
| Trial Judge: | Honorable George C. Hernandez, Jr., Hon. Stephen Kaus |
| Attorneys for Plaintiffs and Appellants Gary George et al.: | Franklin & Franklin APC, J. David Franklin; Law Offices of Anthony A. Ferrigno, Anthony A. Ferrigno |
| Attorneys for Defendant and Respondent eBay, Inc.: | McDermott Will & Emery LLP, William P. Donovan, Jr.; Irene Y. Le; Cooley LLP, Matthew D. Brown, Kristine Forderer. |